UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of:<br><br>STANDARD CHARTERED PLC<br>London, United Kingdom<br><br>STANDARD CHARTERED BANK<br>London, United Kingdom<br><br>STANDARD CHARTERED BANK<br>NEW YORK BRANCH<br>New York, New York | Docket Nos.   19-011-B-FB<br>                         19-011-CMP-FB<br><br>Order to Cease and Desist and Order of Assessment of Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as Amended |

WHEREAS, Standard Chartered plc, London, United Kingdom is a foreign bank, as defined in section 1(b)(7) of the International Banking Act (12 U.S.C. § 3101(7)), that is a large complex financial organization that has a number of separate business lines and legal entities in many countries around the world;

WHEREAS, Standard Chartered Bank, London, United Kingdom (the "Bank") is a foreign bank as defined in section 1(b)(7) of the International Banking Act that is an indirect subsidiary of Standard Chartered plc;

WHEREAS, Standard Chartered plc and the Bank (collectively, "Standard Chartered") conduct operations in the United States through various offices and entities (the "U.S. Offices"), including, but not limited to, Standard Chartered Bank, New York Branch, a branch of the Bank in New York, New York (the "Branch") for which the Board of Governors of the Federal Reserve System (the "Board of Governors") is the appropriate federal supervisor;

WHEREAS, Standard Chartered oversees compliance and risk management for the Branch and other entities within the Standard Chartered organization;

WHEREAS, on December 10, 2012, Standard Chartered and the Branch consented to an Order to Cease and Desist and an Order of Assessment of Civil Money Penalty (collectively, the "2012 Orders") related to the firm's policies and procedures for processing certain U.S. dollar-denominated funds transfers through the Branch involving parties subject to sanctions administered by OFAC (the "OFAC Regulations");

WHEREAS, pursuant to the 2012 Orders, Standard Chartered was required to, *inter alia,* implement: (1) certain improvements to its oversight and compliance program with respect to OFAC Regulations; and (2) policies and procedures to ensure U.S. Offices' personnel provide prompt, complete, and accurate information to examiners, and provide for employee training that emphasizes the importance of full cooperation with banking regulators by all employees;

WHEREAS, the Board of Governors continued to investigate the cross-border payment practices of Standard Chartered following the 2012 Orders and has determined that, between 2009 and 2014, Standard Chartered processed hundreds of millions of dollars in additional transactions in violation of the U.S. sanctions regimes imposed under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06, and the Trading with the Enemy Act, 50 U.S.C. §§ 5, 16, which primarily resulted from deficiencies in compliance procedures at certain of Standard Chartered's foreign offices related to international funds transfers initiated through faxed payment instructions and online banking channels;

WHEREAS, from December 2012 to December 2014, while subject to the 2012 Orders, Standard Chartered personnel engaged in unsafe and unsound practices by failing to disclose to

the Board of Governors the possibility of further sanctions violations via online banking channels;

WHEREAS, to address the deficiencies described above, Standard Chartered has implemented comprehensive group-wide remediation initiatives, and must continue to implement improvements to its U.S. economic sanctions and financial crime compliance controls in order to comply with safe and sound banking practices, and applicable laws and regulations;

WHEREAS, Standard Chartered must take additional steps to fully implement the requirements in the 2012 Orders, and adopt additional measures to ensure the U.S. Offices are able to sufficiently mitigate the risks posed by Standard Chartered offices outside the United States;

WHEREAS, it is the common goal of the Board of Governors, the Federal Reserve Bank of New York ("Reserve Bank"), and Standard Chartered to ensure that the Branch conducts its activities in a safe and sound manner and complies with all applicable federal laws, rules, and regulations;

WHEREAS, Standard Chartered has conducted a review of certain sanctions-related payments and controls and has cooperated with the investigation by the Board of Governors and the Reserve Bank;

WHEREAS, Standard Chartered has entered into settlement agreements with the U.S. Department of Justice, the New York County District Attorney's Office, the Office of Foreign Assets Control of the U.S. Department of the Treasury, the New York State Department of Financial Services, and the U.K. Financial Conduct Authority in connection with Standard Chartered's historical compliance with U.S. sanctions laws and other applicable laws and regulations;

WHEREAS, the Board of Governors is issuing this Consent Order to Cease and Desist and Assessment of Civil Money Penalty ("Order");

WHEREAS, the United Kingdom's Financial Conduct Authority ("FCA"), as the home country supervisor of Standard Chartered plc, has agreed to assist the Board of Governors in the supervision of this Order; and

WHEREAS, pursuant to delegated authority, Bill Winters, Group Chief Executive and Torry Berntsen, CEO, Americas, and Regional Head CIB are authorized to enter into this Order on behalf of Standard Chartered and the Branch, respectively, and to consent to compliance with each and every provision of this Order by Standard Chartered and the Branch, and to waive any and all rights that Standard Chartered or the Branch may have pursuant to section 8 of the Federal Deposit Insurance Act, as amended (the "FDI Act") (12 U.S.C. § 1818), and 12 C.F.R. Part 263, including, but not limited to: (i) the issuance of a notice of charges on any matters set forth in this Order; (ii) a hearing for the purpose of taking evidence on any matters set forth in this Order; (iii) judicial review of this Order; and (iv) the right to challenge or contest, in any manner, the basis, issuance, validity, terms, effectiveness, or enforceability of the Order or any provision hereof.

NOW, THEREFORE, it is hereby ordered by the Board of Governors that, before the filing of the notices, or taking of any testimony, or adjudication of or finding on any issues of fact or law herein, and solely for the purpose of settling this matter without a formal proceeding being filed and without the necessity for protracted or extended hearings or testimony, pursuant to sections 8(b)(1) and (4) of the FDI Act (12 U.S.C. §§1818(b)(1) and (4)), Standard Chartered, the Branch and their institution-affiliated parties, as defined in sections 3(u) and 8(b)(4) of the

FDI Act (12 U.S.C. § 1813(u) and § 1818(b)(4)), shall cease and desist and take affirmative action as follows:

**U.S. Law Compliance Program Enhancements**

1. Within 60 days of this Order, Standard Chartered shall submit a revised U.S. Law Compliance Program ("U.S. Law Compliance Program") for complying with OFAC Regulations, including written programs, policies, and procedures that are acceptable to the Reserve Bank. The revised U.S. Law Compliance Program shall consider, address, and include the following OFAC compliance elements, in addition to those required by the 2012 Orders:

    (a) appropriate OFAC compliance controls, policies, and procedures governing Standard Chartered's customer-facing payment channels, including online and mobile banking and fax-initiated payment instructions;

    (b) clearly defined roles, responsibilities, and accountability for the assessment of U.S. sanctions risks arising from new products or services; and

    (c) measures to ensure that OFAC compliance controls, policies, and procedures are updated on an ongoing basis as necessary to incorporate changes to those products or services lines, or changes to the risk factors associated with those products or services.

**Affiliate Risk Management**

2. During the term of this Order, to ensure that the subsidiaries and branches where the illegal conduct underlying this Order occurred maintain adequate OFAC compliance policies and procedures:

    (a) Standard Chartered shall conduct an annual OFAC compliance review for each such subsidiary and branch that includes: (1) an assessment of the subsidiary or branch's

ability to appropriately identify and communicate activities or deficiencies within its operations that may impact the ability of the U.S. Offices to comply with OFAC sanctions, and (2) appropriate risk-based sampling of both U.S. dollar payments and U.S. dollar trade finance transactions to ensure the subsidiary or branch's compliance with OFAC Regulations, including identification of transactions processed for direct and indirect customers of Standard Chartered ("Affiliate Risk Review");

      (b)    each Affiliate Risk Review shall be conducted in accordance with acceptable auditing standards and Standard Chartered shall promptly adopt appropriate risk-based procedures based on the results of each such review; and

      (c)    the results of each Affiliate Risk Review (including the current status of any remediation identified under the review) shall be incorporated into the compliance review required under Paragraph 2 of the 2012 Cease and Desist Order.

**Corporate Governance and Management Oversight**

3.    Within 60 days of this Order, Standard Chartered shall submit a written plan to ensure that its oversight of sanctions compliance by the firm's subsidiaries and branches is acceptable to the Reserve Bank. The plan shall provide for a sustainable governance framework that, at a minimum, addresses, considers, and includes:

      (a)    measures to ensure that the persons or groups charged with carrying out U.S. sanctions compliance possess appropriate subject matter expertise and are actively involved in carrying out their responsibilities, and procedures to require the escalation of significant matters related to U.S. sanctions compliance risks to senior management and the Standard Chartered Board of Directors;

      (b)    adequate resources for the persons or groups charged with carrying out U.S. sanctions compliance;

      (c)    a description of the information and reports related to U.S. sanctions compliance across the global operations that will be regularly reviewed by senior management; and

      (d)    measures to ensure that material risk management issues in connection with Standard Chartered's U.S. sanctions compliance activities are escalated to and addressed in a timely manner by senior management and the Management Board or a committee thereof, as appropriate.

**Assessment of Civil Money Penalty**

4.    The Board of Governors hereby imposes a civil money penalty on Standard Chartered in the amount of $163,687,500 for the violations of law and unsafe or unsound practices described above, which shall be paid upon the execution of this Order by Fedwire transfer of immediately available funds to the Federal Reserve Bank of Richmond, ABA No. 051000033, beneficiary, Board of Governors of the Federal Reserve System.  This penalty is a penalty paid to a government agency for a violation of law for purposes of 26 U.S.C. § 162(f) and 26 C.F.R. § 1.162-21.  The Federal Reserve Bank of Richmond, on behalf of the Board of Governors, shall distribute this sum to the U.S. Department of the Treasury, pursuant to section 8(i) of the FDI Act (12 U.S.C. § 1818(i)).

**Accountability for Employees Involved in Misconduct**

5.    Standard Chartered shall not in the future directly or indirectly retain any individual as an officer, employee, agent, consultant, or contractor of Standard Chartered or of any affiliate thereof who, based on the investigative record compiled by U.S. authorities, has

done all of the following:  (i) participated in the illegal conduct described in this Order; (ii) been subject to formal disciplinary action as a result of Standard Chartered's internal employee accountability review in connection with the conduct described herein; and (iii) has either separated from Standard Chartered or has had his or her employment terminated.

6. Standard Chartered shall continue to fully cooperate with and provide substantial assistance to the Board of Governors, including but not limited to, the provision of information, testimony, documents, records, and other tangible evidence, and perform analyses as directed by the Board of Governors in connection with the investigations of whether separate enforcement actions should be taken against individuals who are or were institution-affiliated parties of Standard Chartered and who were involved in the misconduct underlying this Order.  For purposes of clarity and not limitation, substantial assistance as used in this Order means Standard Chartered will use its best efforts, as determined by the Board of Governors, to make available for interviews or testimony, as requested by the Board of Governors, present or former officers, directors, employees, agents, and consultants of Standard Chartered, to the extent permitted by law.  This obligation includes, but is not limited to, sworn testimony pursuant to administrative subpoena as well as interviews with regulatory authorities.  Cooperation under this paragraph shall also include identification of witnesses who, to Standard Chartered's knowledge, may have material information regarding the matters under investigation.

**Communications**

7. All communications regarding this Order shall be sent to:

    (a)    Richard M. Ashton, Esq.
             Deputy General Counsel
             Patrick M. Bryan, Esq.
             Assistant General Counsel
             Board of Governors of the Federal Reserve System
             20th & C Streets, N.W.
             Washington, DC  20551

    (b)    Brian O'Halloran
             Vice President
             Federal Reserve Bank of New York
             33 Liberty Street
             New York, NY  10045

    (c)    Patricia Sullivan
             Co-Head, Financial Crime Compliance
             Standard Chartered plc
             1 Basinghall Avenue
             London EC2V 5DD
             United Kingdom

    (d)    Scott Corrigan
             General Counsel, Europe and Americas and
             Global Head, Government Investigations
             Standard Chartered Bank
             New York Branch
             1095 Avenue of the Americas
             New York, NY  10010

**Miscellaneous**

8. Notwithstanding any provision of this Order to the contrary, the Reserve Bank may, in its sole discretion, grant written extensions of time to Standard Chartered and the Branch to comply with this Order.

9. The provisions of this Order shall be binding upon Standard Chartered, the Branch and each of their institution-affiliated parties, in their capacities as such, and their successors and assigns.

10. Each provision of this Order shall remain effective and enforceable until stayed, modified, terminated, or suspended in writing by the Board of Governors.

11. The Board of Governors hereby agrees not to initiate any further enforcement actions, including for civil money penalties, against the Branch, Standard Chartered or any subsidiary thereof, or their successors and assigns, with respect to the conduct involving sanctions violations described in the WHEREAS clauses of this Order, to the extent known by

the Board of Governors as of the effective date of this Order.  This release and discharge shall not preclude or affect (i) any right of the Board of Governors to determine and ensure compliance with this Order or with the 2012 Orders, (ii) any proceedings brought by the Board of Governors to enforce the terms of this Order or of the 2012 Orders, or (iii) any proceedings brought by the Board of Governors against individuals who are or were institution-affiliated parties of Standard Chartered.

12. Except as provided in paragraph 11, the provisions of this Order shall not bar, estop or otherwise prevent the Board of Governors, or any other federal or state agency from taking any other action affecting Standard Chartered, the Branch, or any of its current or former institution-affiliated parties and their successors and assigns.

13. Nothing in this Order, express or implied, shall give to any person or entity, other than the parties hereto and their successors hereunder, any legal or equitable right, remedy, or claim under this Order.

By Order of the Board of Governors of the Federal Reserve System effective this <u>8th</u> day of <u>April</u>, 2019.

| | |
|---|---|
| STANDARD CHARTERED PLC AND STANDARD CHARTERED BANK | BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM |
| By: /s/<br>    Bill Winters<br>    Group Chief Executive | By: /s/<br>    Ann E. Misback<br>    Secretary of the Board |

STANDARD CHARTERED BANK
NEW YORK BRANCH

By: /s/
    Torry Berntsen
    CEO, Americas, and Regional Head CIB