

DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

August 8, 2012

FAC No. 599728

Mr. Tom Scholar
Second Permanent Secretary
HM Treasury
1 Horse Guards Road
London SW1A 2HQ

Dear Mr. Scholar:

We are writing to respond to your request for clarification about the Office of Foreign Assets Control's (OFAC) Iran sanctions regulations as they apply to international payments and specifically the obligations of foreign banks operating in the United States before and after 2008 in respect of transactions involving Iranian counterparties.

As you are aware, the U.S. Department of the Treasury has intensified its sanctions against Iran over the past several years, and today Iran faces the most stringent, comprehensive, and effective sanctions program ever implemented.

A key part of these efforts involves OFAC's aggressive enforcement measures to ensure that our sanctions regulations are being implemented rigorously by the private sector. Beginning in late 2005 with the ABN Amro case, we have resolved a series of record-setting penalty cases alongside our colleagues in the U.S. regulatory and law enforcement communities, penalizing those banks that abused the U.S. financial system on behalf of sanctioned parties. We have held foreign banks – including Lloyds Bank, Credit Suisse, Barclays and ING Bank – to account for payment message manipulation or "stripping," resulting in penalties and forfeitures totaling well over $2 billion. These cases serve as a powerful deterrent, and we continue to investigate past conduct by offenders. We take sanctions violations by financial institutions extremely seriously.

In November of 2008, the Treasury Department rescinded the so-called "U-Turn" license and required U.S. financial institutions to freeze or reject any attempted U-Turn transaction. Working alongside our international counterparts, we also successfully raised international standards in 2009, so that they now require the inclusion of complete originator and beneficiary information on all cross-border transfers.

Prior to OFAC's amendments to its regulations in November 2008, our regulations allowed foreign parties at non-U.S. financial institutions to conduct U.S. dollar clearing transactions under certain conditions. Specifically, prior to November 2008, OFAC's Iranian Transactions Regulations authorized U.S. depository institutions to process funds transfers to or from Iran, or for the direct or indirect benefit of persons in Iran, if the transfers: (a) did not involve the debiting or crediting of an Iranian account maintained on the books of a U.S. depository institution (the accounts of both the ultimate originator and beneficiary were held on the books of a non-U.S. financial institution); and (b) did not involve a person or entity whose property and interests in property are blocked, such as a bank designated by OFAC pursuant to U.S. sanctions

**Exhibit 5**

on proliferators of weapons of mass destruction. If these conditions were met, the transfers could transit the United States, with a U.S. intermediary bank debiting a correspondent account held for a non-Iranian, non-U.S. bank, and a U.S. bank crediting a correspondent account held by another non-Iranian, non-U.S. bank. The transfers were required to terminate offshore, in an account held by the ultimate beneficiary at a non-U.S. financial institution.

Subsection 560.516(c) of the Iranian Transactions Regulations calls on U.S. financial institutions, including foreign financial institutions operating in the U.S., to confirm the applicability of a license only if the institution holds an account for a customer that is initiating or receiving a payment – generally, the first and last banks in a transaction. Because U.S. financial institutions could not serve as either the originating or recipient bank on offshore-to-offshore U-Turn transactions, this subsection did not apply to U.S. financial institutions serving as intermediaries on licensed U-Turn transactions. All of this is historical, however, as we terminated the U-Turn authorization in November 2008 and such payments are now prohibited.

To be clear, this analysis of pre-2008 and post-2008 OFAC regulations is not a comment on the August 6, 2012 Order issued by the New York State Department of Financial Services (DFS) against Standard Chartered Bank. That Order includes counts relating to OFAC's regulations as well as counts solely or predominantly relating to New York State regulations. As Standard Chartered Bank has disclosed, OFAC is investigating the bank for potential Iran-related violations as well as a broader set of potential sanctions violations. We will continue to coordinate with other federal and state agencies, including DFS, in our investigation of the bank and will have no public comment on that investigation until its conclusion.

We will continue to implement and enforce our sanctions vigorously. We look forward to working with you closely and would be happy to answer any additional questions you might have.

Sincerely,

Adam J. Szubin
Director
Office of Foreign Assets Control