NEW YORK STATE DEPARTMENT
OF FINANCIAL SERVICES
─────────────────────────────────X
In the Matter of

                                              CONSENT ORDER UNDER
                                              NEW YORK BANKING LAW §§ 39 and 44

Standard Chartered Bank,
New York Branch
─────────────────────────────────X

The New York State Department of Financial Services ("the Department" or "DFS") and Standard Chartered Bank ("SCB" or the "Bank") (collectively the "Parties") stipulate that:

**WHEREAS**, SCB is a foreign bank with complex operations and multiple business lines and legal entities in many countries worldwide; and

**WHEREAS**, SCB conducts global operations through various subsidiaries and entities including its branch in New York, New York ("SCB NY"); and

**WHEREAS**, the Department is the licensing agency of SCB NY, pursuant to Article II of the New York Banking Law and is responsible for its supervision and regulation; and

**WHEREAS**, on September 21, 2012, the Parties stipulated and agreed in a consent order (the "September 21, 2012 Order") to resolve and remediate the Department's findings of certain deficiencies and apparent violations of laws and regulations; and

**WHEREAS**, pursuant to the September 21, 2012 Order, and State and Federal laws and regulations, SCB's compliance risk management program required an anti-money laundering ("AML") program to identify and manage compliance risks related to the Bank Secrecy Act (the "BSA") and all applicable AML regulations (the "BSA/AML Requirements"); and

**WHEREAS**, pursuant to the September 21, 2012 Order, SCB also agreed to engage an on-site independent monitor ("SCB Monitor") for a period of twenty-four (24) months to

1

**Exhibit 11**

examine and evaluate SCB NY's BSA/AML operations, including SCB NY's transaction monitoring system; and

**WHEREAS**, in connection with implementation of its transaction monitoring system, SCB NY designed multiple detection scenarios which were set forth in a rulebook ("SCB Rulebook"); and

**WHEREAS**, the SCB Monitor gathered historical data and attempted to test the detection scenarios using the procedures provided in the SCB NY Rulebook; and

**WHEREAS**, the SCB Monitor determined that SCB's Rulebook was not consistent with the majority of the actual detection scenarios, and such detection scenarios contained errors or were incomplete resulting in the SCB NY transaction monitoring system failing to detect a significant number of potentially high-risk transactions for further review; and

**WHEREAS**, SCB failed to detect errors within the detection scenarios because of a lack of adequate testing and analysis both pre- and post- implementation of the transaction monitoring system and failed to adequately audit the transaction monitoring system; and

**WHEREAS**, a significant number of the potentially high-risk transactions the system has failed to detect originated from SCB's branches in the United Arab Emirates ("SCB UAE") and subsidiary in Hong Kong ("SCB Hong Kong"), among others; and

**WHEREAS**, the SCB Monitor discovered and reported these significant failures in SCB NY's transaction monitoring system to the Department; reporting further that these failures prevent SCB NY from effectively identifying potentially high-risk customers and transactions for further review in multiple areas of the Bank and hinder SCB's ability to assess and monitor transactions and client relationships on a bank-wide basis; and

**WHEREAS**, SCB NY is operating with certain ineffective compliance risk management systems for the identification and management of compliance risks related to compliance with BSA/AML laws, rules, and regulations, including BSA/AML risk related to U.S. Dollar clearing for clients of SCB UAE and SCB Hong Kong, among others; and

**WHEREAS,** SCB has initiated measures to remediate failures identified by the SCB Monitor;

**NOW, THEREFORE**, the Parties agree and stipulate that, in order to settle the instant matter without a formal proceeding, SCB will take the following measures to ensure compliance with the September 21, 2012 Order and all applicable BSA/AML Requirements:

### Settlement Provisions

**Payment of a Civil Monetary Penalty:**

1. Within ten (10) days of the effective date of this Order, SCB shall make payment of a civil monetary penalty to the Department pursuant to Banking Law § 44 in the amount of $300,000,000.00.  SCB agrees that it will not claim, assert, or apply for a tax deduction or tax credit with regard to any U.S. federal, state or local tax, directly or indirectly, for any portion of the civil monetary penalty paid pursuant to this Order.

**Remediation Measures:**

*The SCB Transaction Monitoring System*

2. SCB NY will implement an effective transaction monitoring system that operates in accordance with all BSA/AML Requirements and is acceptable to the Department.

3. Approval by the Department of the transaction monitoring system will be in writing and in the sole discretion of the Superintendent upon consultation with the SCB Monitor.

4. Within thirty (30) days of the effective date of this Order, in furtherance of remediation of its transaction monitoring system, SCB will:

    A. provide a comprehensive remediation action plan with appropriate deadlines and benchmarks;

    B. further integrate the SCB Monitor in the remediation process;

    C. provide a clear organizational structure of the employees involved in the remediation; and

    D. appoint a competent and responsible SCB Executive who will report directly to the SCB CEO to oversee the remediation and to report on its progress on a monthly basis to the SCB CEO and continue to report to the SCB Monitor in a manner consistent with its current reporting process.

*Extension of the SCB Monitor*

5. SCB will extend the period of its engagement of the SCB Monitor for a period of two (2) additional years. In addition to the duties set forth under the terms and conditions of the September 21, 2012 Order, the SCB Monitor will also test and evaluate SCB's remediation efforts, and oversee SCB NY's implementation of a fully functioning transaction monitoring system and SCB NY's suspension of U.S. Dollar clearing as set forth in this Consent Order, and all other provisions set forth in this Consent Order.

*Timing of Prohibition*

6. The prohibitions set forth below in paragraphs 7, 8 and 9 will remain in effect until such time as SCB NY's detection scenarios are operating to a standard approved by the SCB Monitor.

**New U.S. Dollar Denominated Accounts Prohibited:**

7.   SCB NY will not, without prior approval of the Department in consultation with the SCB Monitor, open a U.S. Dollar demand deposit account for any customer who does not already have such an account with SCB NY.

**New Policies for U.S. Dollar Transactions – Originator/Beneficiary Information:**

8.   SCB will undertake the following:

    A.   **Affiliate U.S. Dollar Clearing Transactions**

For "Affiliate U.S. Dollar Clearing Transactions," which are defined as U.S. Dollar clearing transactions involving: (a) a payment originated from the account of a customer held at a non-U.S. SCB branch or majority-owned subsidiary, and (b) in an amount of $3,000.00 or more, the following will apply:

- Originator Identity Information: SCB NY will require that SCB affiliates provide the identity (name and address, including country) of the originator with respect to all such transactions. If SCB NY determines through post-transaction monitoring that the originator's address, including country, was not received by SCB NY and cannot be derived from the transaction information, SCB NY, post-transaction, will acquire the address, including country, of the originator. SCB will utilize this additional information for transaction monitoring.

- Beneficiary Identity Information: SCB NY will require that SCB affiliates provide any beneficiary identification information received with the transaction instruction with respect to all such

5

transactions, and that SCB NY and SCB affiliates will undertake good faith efforts to obtain beneficiary identification information at the time of the transaction.

- SCB NY will flag, in post-transaction monitoring, transactions that do not contain the country of the beneficiary and will undertake an enhanced review protocol to be agreed upon with the SCB Monitor with respect to those transactions. SCB NY will agree to the enhanced review protocol with the SCB Monitor within thirty (30) days from the effective date of this Consent Order.

B.  **Third Party (Non-Affiliate) Transactions**:

A "Third-Party (Non-Affiliate) Transaction" is defined as a U.S. Dollar clearing transaction involving (a) a payment originated from the account of a third party's customer held at a third party financial institution, and (b) in an amount of $3,000.00 or more.

- Communication to Third Parties: SCB will communicate to its Third-Party (Non-Affiliate) clients that SCB NY requires the country of the originator and beneficiary for all Third-Party (Non-Affiliate) Transactions.

- Missing Originator Information: SCB NY will flag, in post-transaction monitoring, Third-Party (Non-Affiliate) Transactions where the country of the originator was not received and cannot be derived from address information, and undertake an enhanced review protocol to be agreed upon with the SCB Monitor.

- Missing Beneficiary Information: SCB NY will flag, in post-transaction monitoring, Third-Party (Non-Affiliate) Transactions where the country of the beneficiary was not received by SCB NY and cannot be derived from address information, and undertake an enhanced review protocol to be agreed with the SCB Monitor.

**Suspension of U.S. Dollar Clearing:**

9.  SCB NY will suspend its U.S. Dollar clearing services as described in this section (the "Suspension"):

- Hong Kong:

    Within forty-five (45) days from the effective date of this Order, SCB NY will not process U.S. Dollar transactions for SCB Hong Kong high-risk retail business clients. This Suspension will remain in effect until such time as SCB NY's detection scenarios are operating to a standard approved by the SCB Monitor. The criteria for the selection of those high-risk clients who will be subject to the U.S. Dollar clearing suspension has been agreed upon between the SCB Monitor and SCB. In addition, the SCB Monitor will carry out a monthly review of the risks associated with U.S. Dollar transactions from the SCB Hong Kong retail business clients and determine whether additional monitoring or de-risking is necessary.

- UAE:

    SCB has commenced a process of exiting its small and medium business clients ("SME") at SCB UAE, excluding certain clients who may be retained after a requalification process in consultation with the SCB Monitor. Within thirty (30) days from the effective date of this Order, SCB NY will implement heightened monitoring of certain high-risk clients in the SCB UAE SME portfolio. The criteria for the selection of those high-risk clients will be agreed to between the SCB Monitor and SCB. The terms of the heightened monitoring will also be agreed through consultation between the SCB Monitor and SCB. SCB will make good faith efforts to exit SME clients at SCB UAE other than clients who are re-qualified. If exiting of the SME clients at SCB UAE is not completed within ninety (90) days from the effective date of this Order, SCB will suspend all U.S. Dollar clearing through SCB NY for those clients of SCB UAE, unless SCB has sought and obtained an extension of time from the Department, which extension will be at the sole discretion of the Superintendent.

**Avoidance of Suspension:**

10. SCB shall not avoid or circumvent the Suspension by using any SCB branch, affiliate, subsidiary or entity in which SCB has a controlling interest in the United States for U.S. Dollar clearing.

11. SCB shall not avoid or circumvent the Suspension by moving, or causing to be moved, any client relationship or business to any other business line, branch or affiliate of SCB.

**Breach of the Consent Order:**

12. In the event that the Department believes SCB to be materially in breach of the Consent Order ("Breach"), the Department will provide written notice to SCB of the Breach and SCB must, within ten (10) business days from the date of receipt of said notice, or on a later date if so determined in the sole discretion of the Department, appear before the Department to demonstrate that no Breach has occurred or, to the extent pertinent, that the Breach is not material or has been cured.

13. The Parties understand and agree that SCB's failure to make the required demonstration within the specified period is presumptive evidence of SCB's Breach. Upon a finding of Breach, the Department has all the remedies available to it under New York Banking and Financial Services Law and may use any and all evidence available to the Department for all ensuing hearings, notices, orders and other remedies that may be available under the New York Banking and Financial Services Laws.

**Waiver of Rights:**

14. The Parties further understand and agree that no provision of the Consent Order is subject to review in any court or tribunal outside the Department.

**Parties Bound by the Consent Order:**

15. It is further understood that the Consent Order is binding on the Department and SCB, as well as their successors and assigns that are within the supervision of the Department, but it specifically does not bind any federal or other state agencies or any law enforcement authority.

16. No further action will be taken by the Department against SCB for the conduct set forth in the Consent Order, provided that SCB complies with the terms of the Consent Order.

17. Notwithstanding any other provision contained in the Consent Order, however, the Department may undertake action against SCB for any misconduct that SCB knew about and failed to disclose to the Department in connection with this matter.

**Notices:**

18. All communications regarding this Order shall be sent to:

> Elizabeth Nochlin
> Megan Prendergast
> Banking Division
> New York State Department of Financial Services
> One State Street
> New York, NY 10004
>
> Scott Corrigan
> General Counsel, Americas
> Standard Chartered Bank
> 1095 Avenue of the Americas, 37th Floor
> New York, NY 10036

**Miscellaneous:**

19. Each provision of the Consent Order will remain effective and enforceable until stayed, modified, terminated or suspended in writing by the Department.

20. No promise, assurance, representation, or understanding other than those contained in the Consent Order has been made to induce any party to agree to the provisions of the Consent Order.

IN WITNESS WHEREOF, the parties hereto have caused this Consent Order to be executed as of this 19th day of August, 2014.

Standard Chartered Bank                         New York State Department
                                                of Financial Services

By: _____                      By: _____
    Peter Sands                                     Benjamin M. Lawsky
    Chief Executive Officer                         Superintendent

IN WITNESS WHEREOF, the parties hereto have caused this Consent Order to be executed as of this 19th day of August, 2014.

Standard Chartered Bank

New York State Department
of Financial Services

By: _____
Peter Sands
Chief Executive Officer

By: _____
Benjamin M. Lawsky
Superintendent

11