UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRUTUS TRADING, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, and STANDARD CHARTERED TRADE SERVICES CORPORATION,<br><br>　　　　　　　Defendants. | No. 18 Civ. 11117 (PAE) |

## SECOND DECLARATION OF SPECIAL AGENT WAYNE C. BODDY

I, Special Agent Wayne C. Boddy of the Federal Bureau of Investigation, hereby declare the following pursuant to 28 U.S.C. § 1746:

1.　I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2011. I previously signed a declaration in connection with this matter on or around November 21, 2019.

2.　I make this second declaration based on my own personal knowledge as well as a review of documents relating to the investigations referenced in my November 21, 2019, declaration, in connection with the reply brief filed by the United States of America (the "United States") in support of its motion to dismiss the second amended complaint of relator Brutus Trading, LLC (the "Relator"). This declaration does not set forth all of my knowledge of the matters discussed herein. All dates and amounts set forth are approximate and to the best of my recollection, unless otherwise noted.

3.      On April 9, 2019, the United Kingdom's Financial Conduct Authority ("UK-FCA") announced that it had fined Standard Chartered Bank ("SCB") around 102.2 million British pounds for anti-money laundering breaches in two high-risk areas of SCB's business.

4.      The UK-FCA fine was announced on the same day that the United States Department of Justice ("DOJ") announced that it had entered an amended Deferred Prosecution Agreement with SCB, which was discussed in my first declaration.

5.      The simultaneous nature of the announcements was a coordinated effort between the DOJ, the UK-FCA, and other government entities.

6.      The UK-FCA issued a press release on April 9, 2019, describing the nature and purpose of its fine. The UK-FCA press release is attached to this declaration as Exhibit A.

7.      The headline of the UK-FCA press release described the fine as the result of "poor AML [anti-money laundering] controls." The body of the UK-FCA press release similarly stated that the fine stemmed from "serious and sustained shortcomings in Standard Chartered's AML [anti-money laundering] controls relating to customer due diligence and ongoing monitoring." Exhibit A at 1.

8.      The press release did not state that the UK-FCA fine was connected to violations of any government's economic sanctions on Iran. Instead, it noted that the anti-money laundering failings "exposed Standard Chartered to the *risk* of breaching sanctions and increased the risk of Standard Chartered receiving and/or laundering the proceeds of crime." Exhibit A at 1 (emphasis added).

9.      In contrast, the press release specified that United States government authorities had that same day "taken action against the Standard Chartered group for significant violations of U.S. sanctions laws and regulations." Exhibit A at 2.

2

10. Also on April 9, 2019, the UK-FCA published its February 5, 2019, Decision Notice, which explained the reasons why the UK-FCA imposed its fine. The Decision Notice is attached to this declaration as Exhibit B.

11. The Decision Notice stated that SCB had breached U.K. money laundering regulations by "failing to establish and maintain risk-sensitive policies and procedures, and failing to require its . . . branches and subsidiaries to apply UK-equivalent anti-money laundering and counter terrorist financial ('AML') standards regarding customer Due Diligence and ongoing monitoring." Exhibit B at 1. The Decision Notice specified that there had been "serious, and sustained, shortcomings in SCB's financial crime controls in the customer Due Diligence and ongoing monitoring carried out by SCB." *Id.* at 2. The Decision Notice also stated that there were "significant shortcomings" in "(a) SCB's own internal checks on its AML controls; (b) SCB's approach towards identifying and mitigating material money laundering risks; and (c) SCB's escalation of money laundering risks." *Id.*

12. The Decision Notice did not state that the UK-FCA fine resulted from any violations of any economic sanctions on Iran. Instead, it indicated that the UK-FCA had "identified customers with links to countries subject to sanctions," and that SCB's inadequate financial crime controls "not only exposed SCB to sanctions evasion but also increased the risk of SCB receiving and/or laundering the proceeds of crime." Exhibit B at 2-3. The Decision Noticed referred to SCB employees who had "colluded with customers in order to evade financial sanctions against Iran" in connection with the particular point that there were "concerns with the quality and capability of certain relationship managers and the [customer due diligence] they carried out on their customers." *Id.* at 18. The Decision Notice also emphasized its focus on anti-money laundering and financial crime controls (rather than particular violations of

3

economic sanctions) in this way: "[t]he weaknesses in SCB's AML systems and controls resulted in an unacceptable risk that SCB would be used by those seeking to launder money, evade financial sanctions or finance terrorism." *Id.* at 30. Any findings made by the UK-FCA in the Decision Notice that refer to sanctions violations appear to be based on facts known to the Department of Justice, and do not suggest that the Department failed to account for any criminal activity by SCB in the Amended Deferred Prosecution Agreement.

13. The UK-FCA press release noted that the UK-FCA "ha[d] worked closely and extensively with a number of U.K. and overseas agencies" in its investigation of SCB, "including the U.S. Department of Justice, New York County District Attorney, U.S. Board of Governors of the Federal Reserve, New York State Department of Financial Services and U.S. Office of Foreign Assets Control." Exhibit A at 2. This description is consistent with my own observations as the lead FBI case agent on the latter part of the SCB investigation.

14. I am not aware that the UK-FCA interviewed any witnesses that were not also interviewed by United States law enforcement. I am also not aware that the UK-FCA obtained any documents on the subject of economic sanctions violations beyond those obtained by United States law enforcement.

15. The UK-FCA is not a criminal law enforcement agency, and does not have responsibility in the United Kingdom for granting licenses or prosecuting violations of economic sanctions on Iran. Instead, as described on its public website (www.fca.org.uk/about/the-fca), the UK-FCA functions as the regulator of the conduct of financial services organizations in the United Kingdom. Its role is to ensure that relevant financial markets function well, and it has three operational objectives: (a) to secure appropriate protection for consumers; (b) to protect

and enhance the integrity of the U.K. financial system; and (c) to promote effective competition in customers' interests.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:        February _28_, 2020
              New York, New York

                                            _____
                                            Wayne C. Boddy
                                            Special Agent
                                            Federal Bureau of Investigation