

# FCA fines Standard Chartered Bank £102.2 million for poor AML controls

The Financial Conduct Authority (FCA) has fined Standard Chartered Bank (Standard Chartered) £102,163,200 for Anti-Money Laundering (AML) breaches in two higher risk areas of its business. This is the second largest financial penalty for AML controls failings ever imposed by the FCA.

Today's announcement follows FCA investigations into two areas of Standard Chartered's business identified by the bank as higher risk: its UK Wholesale Bank Correspondent Banking business and its branches in the United Arab Emirates (UAE). The FCA found serious and sustained shortcomings in Standard Chartered's AML controls relating to customer due diligence and ongoing monitoring. Standard Chartered failed to establish and maintain risk-sensitive policies and procedures, and failed to ensure its UAE branches applied UK equivalent AML and counter-terrorist financing controls.

Under the Money Laundering Regulations 2007 (MLRs), Standard Chartered was required to establish and maintain appropriate and risk sensitive policies and procedures to reduce the risk it may be used to launder the proceeds of crime, evade financial sanctions or finance terrorism. The MLRs also imposed a duty on Standard Chartered to require its global (non-EEA) branches and subsidiaries to apply policies and procedures in relation to due diligence and ongoing monitoring that are equivalent to those required of Standard Chartered in the UK.

The FCA found significant shortcomings in Standard Chartered's own internal assessments of the adequacy of its AML controls, its approach towards identifying and mitigating material money laundering risks and its escalation of money laundering risks. These failings exposed Standard Chartered to the risk of breaching sanctions and increased the risk of Standard Chartered receiving and/or laundering the proceeds of crime. Examples include:

- opening an account with 3 million UAE Dirham in cash in a suitcase (just over £500,000) with little evidence that the origin of the funds had been investigated;
- failing to collect sufficient information on a customer exporting a commercial product which could, potentially, have a military application. This product was exported to over 75 countries, including two jurisdictions where armed conflict was taking place or was likely to be taking place; and
- not reviewing due diligence on a customer despite repeated red flags such as a blocked transaction from another bank indicating a link to a sanctioned entity.

Standard Chartered's failings occurred in its UK Correspondent Banking business during the period from November 2010 to July 2013 and in its UAE branches during the period from November 2009 to December 2014.

Today, US authorities have also taken action against the Standard Chartered group for significant violations of US sanctions laws and regulations.

Mark Steward, Director of Enforcement and Market Oversight at the FCA, said:

'Standard Chartered's oversight of its financial crime controls was narrow, slow and reactive. These breaches are especially serious because they occurred against a backdrop of heightened awareness within the broader, global community, as well as within the bank, and after receiving specific attention from the FCA, US agencies and other global bodies about these risks.

'Standard Chartered is working to improve its AML controls to ensure all issues are fully addressed on a global basis. The FCA has taken into account Standard Chartered's remediation work and its cooperation in assisting the FCA investigation, without which today's financial penalty would have been even higher.'

The FCA has worked alongside a number of authorities during this investigation. Acknowledging the international co-operation in this case Mark Steward said:

'The FCA has worked closely and extensively with a number of UK and overseas agencies including the US Department of Justice, New York County District Attorney, US Board of Governors of the Federal Reserve, New York State Department of Financial Services and US Office of Foreign Assets Control. I would also like to acknowledge the assistance of the UAE Central Bank whose commitment has demonstrated the fight against money laundering is a truly global one, as it needs to be.'

Standard Chartered did not dispute the FCA's findings and exercised its right, under the FCA's partly contested case process, to ask the FCA's Regulatory Decisions Committee to assess the appropriate level of sanction. Standard Chartered's agreement to accept the FCA's findings meant it qualified for a 30% discount. Otherwise, the FCA would have imposed a financial penalty of £145,947,500.

# Notes to editors

1. The Decision Notice for Standard Chartered [1].
2. Standard Chartered is authorised and regulated by the FCA and is part of the group of companies consisting of Standard Chartered PLC and its subsidiaries.
3. The FCA's Regulatory Decisions Committee (RDC) is an FCA Board Committee that is operationally separate from the rest of the FCA. The FCA Board appoints the RDC Chair and members, who are drawn from across a spectrum of business, consumer and industry backgrounds.
4. The Money Laundering Regulations 2007 were in force in respect of conduct concerning AML controls for the period that was under investigation. The Money Laundering Regulations 2017 came into force on 26 June 2017.
5. The FCA's findings relate to Standard Chartered's UK Wholesale Bank's Correspondent Banking business and Standard Chartered's branches in the United Arab Emirates. Standard Chartered is also licensed to operate in the Dubai International Financial Centre, but the FCA makes no findings in relation to that branch.
6. On 1 April 2013, the FCA became responsible for the conduct supervision of all regulated financial firms and the prudential supervision of those not supervised by the Prudential Regulation Authority (PRA).
7. The FCA has an overarching strategic objective of ensuring the relevant markets function well. To support this, it has three operational objectives: to secure an appropriate degree of protection for consumers; to protect and enhance the integrity of the UK financial system; and to promote effective competition in the interests of consumers.
8. Find out more information about the FCA [2].

Case 1:18-cv-11117-PAE   Document 56-1   Filed 02/28/20   Page 3 of 3

**Source URL:** https://www.fca.org.uk/news/press-releases/fca-fines-standard-chartered-bank-102-2-million-poor-aml-controls

Press Releases   |   Published: 09/04/2019   |   Last updated: 09/04/2019

**Links**

- [1] https://www.fca.org.uk/publication/decision-notices/standard-chartered-bank-2019.pdf
- [2] https://www.fca.org.uk/about
- [3] https://www.fca.org.uk/print/news/press-releases/fca-fines-standard-chartered-bank-102-2-million-poor-aml-controls
- [5] https://www.fca.org.uk/news/press-releases/fca-fines-standard-chartered-bank-102-2-million-poor-aml-controls
- [6] https://www.fca.org.uk/news/media-centre