

**Standard Chartered**

**Export Development Bank of Iran, (a.k.a. Bank Toseh Saderat Iran; a.k.a. Bank Towseeh Saderat Iran; a.k.a. EDBI), EDBI Exchange Company, EDBI Stock Brokerage Company - Bulletin 1**

Date   **23 October 2008**

**US Sanctions against Iran – Export Development Bank of Iran, (a.k.a. Bank Toseh Saderat Iran; a.k.a. Bank Towseeh Saderat Iran; a.k.a. EDBI), EDBI Exchange Company, EDBI Stock Brokerage Company**

Subject **Bulletin 1**

## FOR INTERNAL USE ONLY

This note concerns Iranian business. No US person in SCB is permitted to conduct Iranian business. Any US person should therefore not take any actions in relation to this bulletin.

### A. Background

In August 2007, SCB suspended all new business in all currencies involving any Iranian bank, any other Iranian party, or Iran, and is now taking on no new transactions involving any Iranian bank, any other Iranian party, or Iran in any capacity.  This suspension remains in effect.  The bulletin on this subject dated 23 July 2007 remains in effect.

This new bulletin relates to the additional Iranian bank and related parties listed above, which were designated as SDNs by the US on 22 October 2008, and how SCB must handle any remaining existing commitments involving these banks. The parties designated by the United States Treasury Department as Specially Designated Names (SDNs) are:

**Export Development Bank of Iran, (a.k.a. Bank Toseh Saderat Iran; a.k.a. Bank   Towseeh Saderat Iran; a.k.a. EDBI), EDBI Exchange Company, EDBI Stock Brokerage Company**

These designations include all offices of these companies worldwide.  In this bulletin they are called Designated Parties.

Assets of the Designated Parties in the United States are frozen, and U.S. dollar payments can no longer be made by, to or through these parties. Funds sent to the US will be frozen there.

This note applies only to completion of commitments involving the Designated Parties, which commitments predate SCB's suspension of new Iran-related business (2 August 2007 for clients other than Iranian banks, and 31 August 2007 for Iranian bank clients).

As SCB has already suspended all new business in all currencies involving all Iranian banks and parties, this bulletin explains how the designation as SDNs of the Designated Parties impacts the performance of existing obligations involving them.  The impact is on obligations owed in USD, which must now be paid in another currency.  Where stated in this bulletin, prior approval is required.

### B. General

#### New transactions suspended

Standard Chartered Bank has already suspended all new business in all currencies involving Iranian banks, other Iranian parties or Iran.  No new transaction may be entered into in any currency which involves any of the Designated Parties (or any other Iranian party) in any manner, whether as client, direct counterparty, or other participant in a transaction, eg reimbursement bank, remitter, beneficiary or intermediary bank.  This prohibition also means that we will not advise any new Letter of credit or Guarantees issued by a Designated Party or handle any new Bills for Collection.

Exhibit 15

The remainder of this bulletin applies only to performance of existing obligations.

**Existing transactions**

SCB has suspended all new business in all currencies involving Iran, including all new business involving Iranian banks and parties.  We continue to honour commitments which predate that suspension to the extent possible in accordance with applicable sanctions.   We are keen to ensure if possible that USD transactions which predate that suspension are processed and settled in a way that avoids delay or financial loss to our clients.  We are working with the Designated Parties to settle outstanding USD obligations in an alternative freely convertible currency.  Existing transactions denominated in USD may generally be settled by payment in alternative currencies.

All existing transactions involving Iran in any currency must already be referred for prior approval by the Group.  This referral requirement remains in effect.

All existing Iran-related transactions, including any which involve the Sanctioned Parties, must be referred to the following, who will seek approval from the Group Iran Risk Committee (IRC):

Trade:  Chris Jenkins and Lionel de Silva

Cash:   Shekhar Gupta and CM, Ganeshram

Other:  Salar Khan.

### C.  Q & A on existing trade transactions

1. *What is the procedure for outstanding CBC (Credit Bills for Collection) (L/Cs not confirmed and / or financed by us) issued by a Designated Party and where payment instructions are for the bills proceeds to be paid in USD?*

We should obtain the beneficiary's written agreement to obtain settlement from the Designated Bank in another freely convertible currency prior to processing the transaction. Any FX deal to convert the alternative currency into USD must be for the account of and in the name of the beneficiary and not for the account of the Designated Party, and any FX risk will be for account of the beneficiary.

Where payment instructions are for the bill proceeds to be paid in a currency other than USD, payment may be effected in the normal course of business subject to sanctions and Group policy compliance.

However prior referral of all transactions is required to Chris Jenkins for approval by the IRC.

2. *What is the procedure for outstanding confirmed or financed LC's or avalised collections where payment instructions are for the bills proceeds to be paid in USD?*

In all cases payment should be made in an alternative currency by the Designated Party.  An FX transaction for this purpose is permitted, provided that any FX transaction involving USD is not made on the account of a Designated Party.  We will advise the Designated Party of the alternative currency and FX rate used.

Where we have confirmed or financed an LC containing an alternative currency clause, or where we have financed a collection not under an LC, the procedure will be the same as above and any FX risk will be for account of the beneficiary.

However prior referral of all transactions is required to Chris Jenkins for approval by the IRC.

3. *For an LC issued by a Designated Party in USD or any other currency that has already been advised through us, and we have already added confirmation, if there is an amendment, do we reject and return it to the bank?*

All amendments should be referred to Chris Jenkins, Global Head, Trade Operations.

**4. What is the procedure for existing Back-to-Back LCs & transferable LCs issued in USD?**

The reimbursement procedures in 2 above must be applied to both the master LC and the slave LC and also transferred LCs. However prior referral is required to Chris Jenkins for approval by the IRC.

**5. Can we handle doc prep transactions that include the preparation of documents destined for a Designated Party?**

In line with SCB's suspension of new Iran-related business, we cannot process new DocPrep transactions involving any Iranian Bank.

**6. If a Designated Party is the reimbursement bank for an existing LC issued by another bank, can we accept payment of USD from the Designated Party?**

No, payment must be made in a different currency or alternatively the Issuing Bank, provided it is not an SDN, may be requested to remit funds directly to SCB. However prior referral is required to Chris Jenkins for approval by the IRC.

**7. Can we make a payment under an existing LC on the instructions of a Designated Party in a currency other than USD?**

Yes, but no payment may be made of USD. Prior referral is required to Chris Jenkins for approval by the IRC.

**8. If I have any other questions on trade transactions who do I go to?**

Chris Jenkins, Global Head Trade Operations.

**D.  Q & A on existing payment obligations**

**9. How do the new measures affect accounts held with us by Designated Parties?**

In line with SCB's suspension of Iran-related business, all accounts of the Designated Parties have already been suspended, except to the extent necessary to complete pre-existing transactions.

The new measures prevent the Designated Parties from making, or receiving, any payments in USD. Thus any pre-existing USD obligation must be settled in another currency. Any instruction from a Designated Bank to make or receive a payment in USD or any other currency must be referred to Shekhar Gupta, Global Head Cash Operations for approval by the IRC.

**10. Should we cancel BKE arrangements with Designated Parties?**

No.

**11. What should we do if we receive a USD payment for the account of a Designated Party?**

Refer to Shekhar Gupta, Global Head Cash Operations.

**12. Can we make a payment under an existing transaction, on the instructions of a Designated Bank in a currency other than USD?**

Yes, but there can be no payment of USD. However prior referral is required to Shekhar Gupta for approval by the IRC.

**13. Can we receive a payment under an existing transaction in a currency other than USD from a Designated Party for the account of a client (other than a Designated Party)?**

Yes, payments in a currency other than USD to perform existing obligations can be accepted for the time being. However prior referral is required to Shekhar Gupta for approval by the IRC.

**14. If I have any other questions on payments who do I go to?**

You should refer to Shekhar Gupta, Global Head, Cash Operations.

E. Q & A on other types of existing transaction

**What will happen to existing loans to Designated Parties that are denominated in USD?**

Payments must be in an alternative currency. We are discussing this with the banks concerned. Prior referral is required to Shekhar Gupta for approval by the IRC.

**Can we undertake FX transactions to complete existing commitments with Designated Parties?**

For existing commitments, if the transaction does not involve USD, the FX transaction may be undertaken. We may also make an FX conversion out of USD so as to perform an existing USD obligation involving a Designated Party in another currency, provided that the exchange is not made on the account of a Designated Party. However any FX transaction must be approved in advance by Martin Rowlands.

**If I have any other questions on transactions other than trade or payments, who do I go to?**

You should refer to one of the following:

Irene Graham           irene.graham@standardchartered.com

Martin Rowlands           martin.rowlands@standardchartered.com

Salar Khan           salar.khan@standardchartered.com

**F. General Q & A on Standard Chartered and Iran**

**1. How may I respond to questions from Designated Parties or other clients about SCB's position regarding transactions involving Designated Parties?**

After careful review of the international regulatory and commercial environment, Standard Chartered suspended new business involving [name of Designated Party] for the time being in 2007. We are honouring existing commitments to the extent permitted by international regulations.

**2. What can I tell clients regarding SCB's position as regards Iran business in general?**

After careful review of the international regulatory and commercial environment, Standard Chartered has suspended new business involving Iran for the time being. We are honouring existing commitments to the extent permitted by international regulations.

**G. Summary**

As SCB has already suspended all new business in all currencies involving all Iranian banks and other Iranian parties, this bulletin explains how the designation as SDNs of the Designated Parties impacts the performance of existing obligations involving those parties. The impact is on obligations owed in USD, which must now be paid in another currency. Prior approval is required to complete all transactions in any currency involving the Designated Parties and all other transactions which involve an Iranian party or Iran in any manner.

Irene Graham
Chris Jenkins
Shekhar Gupta
Salar Khan
Martin Rowlands