UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA, *ex rel.* BRUTUS
TRADING, LLC,

                                        Plaintiffs,

                    -v-

STANDARD CHARTERED BANK, STANDARD
CHARTERED PLC, and STANDARD CHARTERED
TRADE SERVICES CORPORATION,

                                        Defendants.

_____

18 Civ. 11117 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This is a *qui tam* action brought on behalf of the United States by relator Brutus Trading,

LLC ("relator"), alleging that defendants Standard Chartered Bank, Standard Chartered PLC, and

Standard Chartered Trade Services Corporation (together, "defendants" or "Standard Chartered")

engaged in banking practices that violated U.S. sanctions against Iran.  Before the Court is the

Government's motion to dismiss relator's *qui tam* complaint.  For the reasons that follow, the

Court grants the motion.

## I.    Background

The Court assumes familiarity with the facts and procedural history of this case.  In brief,

this matter stems from defendants' admitted practice, between 2001 and 2007, of deceptively

facilitating U.S. Dollar transactions by Iranian clients, in violation of U.S. sanctions and various

New York and federal banking regulations.  *See* Dkt. 18[1] (Second Amended Complaint, or "SAC")

¶¶ 27–32.  Following a multi-year, multi-agency investigation, defendants entered into a 2012

_____

[1] Except where specified, citations to the docket refer to the docket of the instant case,
No. 18 Civ. 11117 (PAE).

Deferred Prosecution Agreement ("DPA") with the Department of Justice ("DOJ")—and related settlements or consent agreements with the Office of Foreign Asset Control ("OFAC"), the Federal Reserve, the New York County District Attorney's Office ("DANY"), and the New York Department of Financial Services ("DFS")—to resolve the matter, for which defendants paid hundreds of millions of dollars in fines and penalties.  *See id.*; *id.*, Ex. A.  The 2012 DPA was publicly announced on December 10, 2012.  *Id.* ¶ 29.

On December 17, 2012, relator—an entity formed by Julian Knight and Robert Marcellus for the purpose of pursuing this action—filed a *qui tam* action that was assigned to Judge Forrest, in which it alleged that the defendants had misled the Government in negotiating the 2012 DPA. *United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank et al.*, No. 12 Civ. 9160 (KBF) ("*Brutus Trading I*"), Dkt. 36.  Specifically, relator alleged that defendants had continued to engage in sanctions-violating conduct beyond 2007, notwithstanding their representations to the Government that they had thereafter ceased doing so.  *Id.* ¶¶ 25–34.  The Government, as discussed *infra*, investigated relator's allegations but ultimately found them unsupported.

In approximately August 2013, the Government informed relator's counsel that it intended to decline to intervene in the case.  Dkt. 31 ("Gov't Mem.") at 8; Dkt. 32 ("Komar Decl.") ¶¶ 24–25.  The Government kept the complaint under seal, however, while it pursued a separate investigation of potential Iran sanctions violations by defendants (the "2013 Investigation"). Gov't Mem. at 8; Komar Decl. ¶ 31.  On May 10, 2017, Judge Forrest unsealed the case, *Brutus Trading I*, Dkt. 19, and on July 14, 2017, the Government informed Judge Forrest that it would not be intervening, *id.*, Dkt. 24.  On September 19, 2017, relator dismissed its complaint without prejudice.  *Id.*, Dkt. 35.

On November 29, 2018, relator re-filed its complaint. *See* SAC ¶ 37. It was assigned to this Court, Judge Forrest having left the bench. Dkt. 1. In March 2019, the Government again declined to intervene, Gov't Mem. at 12, and the case was later unsealed, Dkt. 3. On April 9, 2019, DOJ announced a new DPA (the "2019 DPA") with defendants—and OFAC, the Federal Reserve, and DFS announced new settlement or consent agreements with defendants—stemming from the results of the 2013 Investigation. *See* SAC ¶¶ 60–61; *see also* Dkt. 35 ("Bryan Decl.") ¶¶ 11–16; Dkt. 58 ("Nochlin Decl.") ¶¶ 13–14. On July 19, 2019, relator filed its First Amended Complaint, Dkt. 15 ("FAC"), in which, *inter alia*, it added the allegation that the 2019 DPA, like the 2012 DPA, "did not address the broader course of conduct by [defendants] in violation of the Iran sanctions" alleged by relator's complaint, *id.* ¶ 62. The FAC also advanced a new theory of recovery based on alleged reverse false claims, *see* 31 U.S.C. § 3729(a)(1)(G), by defendants. *Id.* ¶¶ 63–65. On September 20, 2019, relator filed its Second Amended Complaint, in which it added allegations that it had been the initial source of the information leading to the 2019 DPA and related agreements, *see* SAC ¶¶ 64–65, and was therefore entitled to a share of the Government's recovery from those agreements, *id.* ¶ 69.

On November 21, 2019, the Government filed a motion to dismiss the SAC, Dkt. 30; a supporting memorandum of law, Gov't Mem.; the declaration of FBI Special Agent Matthew Komar, Komar Decl., with attached exhibits; the declaration of FBI Special Agent Wayne Boddy, Dkt. 33 ("Boddy Decl."), with attached exhibits; the declaration of Alexandre Manfull, Dkt. 34 ("Manfull Decl."), with attached exhibits; and the declaration of Patrick Bryan, Bryan Decl., with attached exhibits. On January 10, 2020, relator filed a memorandum of law in opposition, Dkts. 48–49 ("Relator Mem."), with attached exhibits, including the declaration of Robert Marcellus, Dkt. 48-1 ("Marcellus Decl."), the declaration of Julian Knight, Dkt. 48-2

("Knight Decl."), the declaration of Anshuman Chandra, Dkt. 48-3 ("Chandra Decl."), and the

declaration of Dennis Sweeney, Dkt. 48-4 ("Sweeney Decl.").  On February 28, 2020, the

Government filed a reply memorandum of law, Dkt. 54 ("Gov't Reply"); the reply affirmation of

Agent Komar, Dkt. 55 ("Komar Reply Decl."); the reply affirmation of Agent Boddy, Dkt. 56

("Boddy Reply Decl."), with attached exhibits; the reply affirmation of Alexandre Manfull,

Dkt. 57 ("Manfull Reply Decl."); and the affirmation of Elizabeth Nochlin, Nochlin Decl., with

attached exhibits.  On March 13, 2020, relator filed a sur-reply, Dkt. 61 ("Relator Sur-Reply"),

with attached exhibits.

## II.    Standard of Review

The False Claims Act ("FCA" or the "Act"), 31 U.S.C. § 3729 *et seq.*, permits a private

party (a "relator") to bring a civil suit, known as *qui tam* action, in the name of the United States

to enforce the Act's prohibitions of the submission of false claims to the Government.  *See id.*

§ 3730(b)(1).  The Government retains the ability to exercise significant control over such suits.

*See id.* § 3730(b)–(c).  Among other rights, the FCA permits the Government to intervene in

such suits, *id.* § 3703(b)(2), and, relevant here, to move to dismiss them even when it has

declined to intervene, *see id.* § 3703(c)(2)(A).

The Second Circuit has not definitively established the standard of review for a motion

by the Government to dismiss a *qui tam* action.  *See U.S. ex rel. Stevens v. State of Vt. Agency of

Nat. Res.*, 162 F.3d 195, 201 (2d Cir. 1998).  In general, courts have followed one of two

approaches.  The first, articulated by the D.C. Circuit in *Swift v. United States*, 318 F.3d 250

(D.C. Cir. 2003), analogizes the United States' motion to dismiss a *qui tam* action to a decision

not to prosecute.  Thus, at least where a defendant has not yet been served, the D.C. Circuit has

concluded that dismissal is the Government's "unfettered right," and all but unreviewable absent

fraud on the court.  *Swift*, 318 F.3d at 252–53; *see also Hoyte v. Am. Nat'l Red Cross*,

4

518 F.3d 61, 65 (D.C. Cir. 2008).  The second approach, set out by the Ninth Circuit in *United States ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998), is somewhat less deferential.  Under the *Sequoia Orange* standard, the Government must first identify "a valid government purpose" and "a rational relation between dismissal and accomplishment of the purpose."  *Id.* at 1145; *see also Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936 (10th Cir. 2005) (adopting the *Sequoia Orange* standard).  The burden then shifts to the relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal."  *Sequoia Orange*, 151 F.3d at 1145.

Like other courts in this District to have considered this question, the Court concludes that it need not definitively determine the appropriate standard of review to resolve this case. That is because the Government has carried its burden even under the more searching *Sequoia Orange* standard.  *See United States ex rel. Borzilleri v. AbbVie, Inc.*, No. 15 Civ. 7881 (JMF), 2019 WL 3203000, at *2 (S.D.N.Y. July 16, 2019) ("The Court need not take a side in the dispute, however, because it concludes that the Government may dismiss the case even under the more stringent standard articulated in *Sequoia Orange*."); *United States ex rel. Amico v. Citigroup, Inc.*, No. 14 Civ. 4370 (CS), 2015 WL 13814187, at *4 (S.D.N.Y. Aug. 7, 2015) ("While this Court is more inclined toward *Swift* than *Sequoia*, the question need not be resolved because dismissal is required under either standard."); *see also U.S. ex rel. Piacentile v. Amgen Inc.*, No. 04 Civ. 3983 (SJ), 2013 WL 5460640, at *4 (E.D.N.Y. Sept. 30, 2013) ("[E]ven if the government's right to dismiss ought to be conditioned on a demonstrable nexus to a valid government purpose, this Court finds that nexus to be present.").  *But see United States v. Cooperatieve Bank U.A.*, No. 17 Civ. 2708 (LGS), 2019 WL 5593302, at *3 (S.D.N.Y. Oct. 30, 2019) ("The Court adopts the *Sequoia* standard[.]").

III.    **Discussion**

Although the Government advocates application of the *Swift* test, Gov't Mem. at 16–19, in recognition of the potential use of a more searching inquiry it proffers three independent bases for its decision to move to dismiss relator's complaint, *id.* at 19–30.  The Court need only address the first two, each of which it finds satisfy *Sequoia Orange*'s threshold test.

First, the Government represents that relator's allegations did not lead to the discovery of any new FCA violations by defendants and were not the impetus for the 2013 Investigation.  *Id.* at 23–28; Gov't Reply at 8–14.  In support, the Government has submitted declarations from the successive lead FBI case agents on the investigation, *see* Komar Decl.; Boddy Decl.; Komar Reply Decl.; Boddy Reply Decl.  It has also submitted declarations from leading members of the investigation teams of OFAC, *see* Manfull Decl.; Manfull Reply Decl.; the Federal Reserve, *see* Bryan Decl.; and DFS, *see* Nochlin Decl.  These declarations describe in detail the Government's investigation of defendants, the steps that the agencies took to investigate relator's claims, and the reasons why the investigating agencies concluded that the evidence did not substantiate relator's allegations that defendants had engaged in additional sanctions-violating conduct.  *See* Komar Decl. ¶¶ 7–25; Manfull Decl. ¶¶ 22–38; Bryan Decl. ¶¶ 5–10; Nochlin Decl. ¶¶ 6–10, 20; Manfull Reply Decl. ¶¶ 20–25, 29.  These declarations also explain concretely the reasons why the information provided by relator did not contribute to the 2013 Investigation that resulted in the 2019 DPA.  *See* Komar Decl. ¶¶ 26–41; Boddy Decl. ¶¶ 4–10, 16–18; Manfull Decl. ¶¶ 39–56; Bryan Decl. ¶¶ 11–16; Manfull Reply Decl. ¶¶ 26–30, 34; Nochlin Decl. ¶¶ 12–20; *see generally* Komar Reply Decl.

On the detailed record presented, the Court has no difficulty finding that the Government has proffered "a valid government purpose" for seeking to dismiss the *qui tam* action—namely, the early termination of actions as to which the Government has determined that the factual

6

allegations are meritless—and has articulated a more than "rational relation between dismissal and accomplishment of th[at] purpose." *Sequoia Orange*, 151 F.3d at 1145; *see, e.g.*, *United States v. Gilead Scis., Inc.*, No. 11 Civ. 941 (EMC), 2019 WL 5722618, at *7 (N.D. Cal. Nov. 5, 2019); *United States v. EMD Serono, Inc.*, 370 F. Supp. 3d 483, 490 (E.D. Pa. 2019); *Nasuti ex rel. U.S. v. Savage Farms, Inc.*, No. 12 Civ. 30121 (GAO), 2014 WL 1327015, at *11 (D. Mass. Mar. 27, 2014), *aff'd sub nom. Nasuti v. Savage Farms Inc.*, No. 14-1362, 2015 WL 9598315 (1st Cir. Mar. 12, 2015).

Second, the Government argues that dismissal is appropriate because, were the case to proceed to discovery, the Government would be required to expend resources on a matter that it has found meritless.  Gov't Mem. at 28–30; Gov't Reply at 14.  This is a well-established basis for the dismissal of a *qui tam* complaint.  *See Cooperatieve Bank*, 2019 WL 5593302, at *3; *Borzilleri*, 2019 WL 3203000, at *2; *Amico*, 2015 WL 13814187, at *4; *see also Sequoia Orange*, 151 F.3d at 1146.  It is particularly compelling in this case, where the Government has already recovered hundreds of millions of dollars from defendants after two multi-agency investigations that spanned nearly a decade.  *See* Gov't Mem. at 4–5 & n.1, 10–11 & n.5.  The Court finds the Government's considered decision not to expend additional resources on this litigation to be an independent "valid government purpose" justifying dismissal.  *Sequoia Orange*, 151 F.3d at 1145.[2]

---

[2] Having found the Government's first two proffered bases for dismissing this action to be well-founded, the Court does not need to delve into the third: that the theory underpinning relator's reverse false claim allegations is legally unsupported.  *See Borzilleri*, 2019 WL 3203000, at *2 (court may grant Government's motion to dismiss under the *Sequoia Orange* test so long as it has "demonstrate[d] at least one valid government purpose for seeking dismissal" (internal quotation marks omitted)).  Relator contends that *all* funds involved in *any* sanctions-violating transactions are *automatically* forfeited to the Government "by operation of statute."  *See* SAC ¶¶ 8, 66, 71; Relator Opp'n at 17 ("Thus, the billions of dollars involved in the Defendants' illegal clearing transactions became, at the time of those transactions, the property of the United States, though still in the hands of the Defendants.").  The Government argues that this is a

"Because the Government offers a valid purpose for dismissal, the burden shifts to [relator] to show that the dismissal is nonetheless 'fraudulent, arbitrary and capricious, or illegal.'" *Borzilleri*, 2019 WL 3203000, at *2 (quoting *Sequoia Orange*, 151 F.3d at 1145). Relator has failed to carry its burden.  As to the Government's contention that it investigated relator's claims and found them to be without merit, as well as its contention that relator's submissions were not the source of the 2013 Investigation, relator argues that the Government either failed to properly investigate its contentions or failed to understand the import of the evidence it provided.  Relator Mem. at 1–14, 20–30.  But "[t]he Government's memoranda reveal, and the Court has no basis to doubt, that the Government undertook a lengthy, costly, and substantial investigation into [relator]'s claims that spanned several years and multiple offices and agencies.  [Relator]'s subjective disagreement with the Government's investigative strategy and ultimate decision does not provide the Court with a basis to second-guess the Government's decision to dismiss the case." *Borzilleri*, 2019 WL 3203000, at *2 (internal citations omitted); *see also Cooperatieve Bank*, 2019 WL 5593302, at *3; *EMD Serono, Inc.*, 370 F. Supp. 3d 483, 490 (E.D. Pa. 2019); *Piacentile*, 2013 WL 5460640, at *3.  That relator would have reached a

---

"facially invalid legal theory," because "an act giving rise to a potential civil forfeiture, even once the United States files a forfeiture action, does not create an obligation owed by the holder of the forfeitable party to the United States, and therefore does not constitute a reverse false claim to the Government."  Gov't Mem. at 20–21.  The Court need not resolve this dispute in light of the independent bases for dismissal.  But even assuming *arguendo* that such a theory were legally viable—and the Court views that premise with skepticism—there would be good reasons for dismissal under the *Sequoia Orange* framework.  Relator "asserts a never-before-recognized liability theory that is a long way from striking pay dirt.  Even if [relator] prevails at the trial-court level, [defendants] would no doubt force [it] to defend [its] novel liability theory on appeal." *United States ex rel. Vanderlan v. Jackson HMA, LLC*, No. 3:15 Civ. 767 (DPJ), 2020 WL 2323077, at *12 (S.D. Miss. May 11, 2020).  The Government, as a repeat player with a vested stake in the precedential impact of such a legal theory, would thus need to expend time and resources monitoring, if not actively participating in, each stage of the litigation, thereby increasing the burden of costs from a matter it considers meritless, against defendants from which it has already recovered millions of dollars.

different result than the one reached by two U.S. Attorney's Offices, the FBI, OFAC, the Federal Reserve, DANY, and DFS does not make the Government's decision arbitrary and capricious.

Relator makes a similarly ineffective attempt to undercut the Government's argument that dismissing this case would preserve Government resources. Relator argues that such an argument is irrational because the Government "makes no effort to come to grips with the information [r]elator has produced," Relator Mem. at 22, and characterizes the Government's investigation as an "inexcusable expenditure of time, taxpayer money and other resources," *id.* at 30, because it did not reach the conclusion that relator deems correct. For the reasons discussed above, on the record proffered by the Government, relator's difference of opinion is insufficient to transform the Government's decision into one that is arbitrary and capricious.

Because the Court finds that relator has failed to establish that either of the Government's stated reasons for moving to dismiss the complaint are arbitrary and capricious, and relator has not alleged that the decision was fraudulent or illegal, relator has not carried its burden under *Sequoia Orange*.

## CONCLUSION

For the reasons stated above, the Court finds that at least two of the reasons proffered by the Government in support of dismissal qualify as "valid government purpose[s]" and that the Government has articulated "a rational relation between dismissal and accomplishment of th[ose] purpose[s]." *Sequoia Orange*, 151 F.3d at 1145. The Court further finds that relator has not carried its burden of showing that either, let alone both, of these reasons "is fraudulent, arbitrary and capricious, or illegal." *Id.* The Court therefore grants the Government's motion to dismiss the Second Amended Complaint.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 30 and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 2, 2020
       New York, New York