UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, *ex rel.* BRUTUS TRADING, LLC,

                      Plaintiff,

-v-

STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, and STANDARD CHARTERED TRADE SERVICES CORPORATION,

                      Defendants.

18 Civ. 11117 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In this *qui tam* action brought on behalf of the United States, relator Brutus Trading, LLC ("Brutus" or "relator"), has alleged that defendants Standard Chartered Bank, Standard Chartered PLC, and Standard Chartered Trade Services Corporation (together, "defendants" or "Standard Chartered") engaged in banking practices that violated U.S. sanctions against Iran. In a July 2020 decision, the Court dismissed relator's complaint. It found that the Government had articulated multiple valid purposes served by dismissal, and that relator had not carried its burden to show that a dismissal would be "fraudulent, arbitrary or capricious, or illegal." Relator's appeal of that dismissal is pending before the Second Circuit.

Relator now moves for an indicative ruling under Federal Rule of Civil Procedure 62.1 to the effect that, had it had jurisdiction to do so, the Court, based on disclosures in a post-dismissal BuzzFeed news report, would vacate the dismissal under Federal Rules of Civil Procedure 60(b)(2), 60(b)(1), 60(b)(3), or 60(d)(3). For the reasons that follow, the Court denies the motion for such indicative relief.

I.  **Background**

   A.  **The Motion to Dismiss**

The Court assumes familiarity with the facts and procedural history of this case. In brief, this matter stems from defendants' admitted practice, between 2001 and 2007, of deceptively facilitating U.S. Dollar transactions by Iranian clients, in violation of U.S. sanctions and various New York and federal banking regulations. *See* Dkt. 18[1] (Second Amended Complaint, or "SAC") ¶¶ 27–32. Following a multi-year, multi-agency investigation, defendants entered into a 2012 Deferred Prosecution Agreement ("DPA") with the Department of Justice ("DOJ")—and related settlements or consent agreements with the Office of Foreign Asset Control ("OFAC"), the Federal Reserve, the New York County District Attorney's Office ("DANY"), and the New York Department of Financial Services ("DFS")—to resolve the matter, under which defendants paid hundreds of millions of dollars in fines and penalties. *See id.*; *id.*, Ex. A. The 2012 DPA was publicly announced on December 10, 2012. *Id.* ¶ 29.

On December 17, 2012, relator—an entity formed by Julian Knight and Robert Marcellus for the purpose of pursuing this action—filed a *qui tam* action that was assigned to Judge Forrest. Relator alleged that defendants had misled the Government in negotiating the 2012 DPA. *United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank et al.*, No. 12 Civ. 9160 (KBF) ("*Brutus Trading I*"), Dkt. 36. Specifically, relator alleged that defendants had continued to violate the sanctions after 2007, notwithstanding their representations to the Government that they had ceased to do so. *Id.* ¶¶ 25–34. The Government investigated relator's allegations but found them unsupported.

---

[1] Except where specified, citations to the docket refer to the docket of this case, No. 18 Civ. 11117 (PAE).

2

In approximately August 2013, the Government informed relator's counsel that it intended to decline to intervene in the case. Dkt. 31 ("Nov. 2019 Gov't Mem.") at 8; Dkt. 32 ("Nov. 2019 Komar Decl.") ¶¶ 24–25. The Government kept the complaint under seal, however, while it pursued a separate investigation of potential Iran sanctions violations by defendants (the "2013 Investigation"). Nov. 2019 Gov't Mem. at 8; Nov. 2019 Komar Decl. ¶ 31. On May 10, 2017, Judge Forrest unsealed the case, *Brutus Trading I*, Dkt. 19; on July 14, 2017, the Government informed Judge Forrest that it would not be intervening, *id.*, Dkt. 24. On September 19, 2017, relator dismissed its complaint without prejudice. *Id.*, Dkt. 35.

On November 29, 2018, relator re-filed its complaint, *see* SAC ¶ 37, which was assigned to this Court, Judge Forrest having left the bench. Dkt. 1. In March 2019, the Government again declined to intervene, Nov. 2019 Gov't Mem. at 12, and the case was later unsealed, Dkt. 3. On April 9, 2019, DOJ announced a new DPA (the "2019 DPA") with defendants—and OFAC, the Federal Reserve, and DFS announced new settlement or consent agreements with defendants—stemming from the results of the 2013 Investigation. *See* SAC ¶¶ 60–61; *see also* Dkt. 35 ¶¶ 11–16; Dkt. 58 ¶¶ 13–14.

On July 19, 2019, relator filed its First Amended Complaint, Dkt. 15 ("FAC"), in which, *inter alia*, it added the allegation that the 2019 DPA, like the 2012 DPA, "did not address the broader course of conduct by [defendants] in violation of the Iran sanctions" alleged by relator's complaint, *id.* ¶ 62. The FAC also advanced a new theory of recovery based on alleged reverse false claims, *see* 31 U.S.C. § 3729(a)(1)(G), by defendants, FAC ¶¶ 63–65.

On September 20, 2019, relator filed its Second Amended Complaint, in which it added allegations that it had been the initial source of the information leading to the 2019 DPA and

3

related agreements, *see* SAC ¶¶ 64–65, and was thus entitled to a share of the Government's recovery from those agreements, *id.* ¶ 69.

On November 21, 2019, the Government filed a motion to dismiss the SAC, Dkt. 30, a supporting memorandum of law, Dkt. 31, and declarations.[2] On January 10, 2020, relator filed a memorandum of law in opposition, Dkts. 48–49, with attached exhibits and declarations.[3] On February 28, 2020, the Government filed a reply memorandum of law, Dkt. 54, and associated exhibits and affirmations.[4] On March 13, 2020, relator filed a sur-reply, Dkt. 61, with attached exhibits.

On July 2, 2020, this Court granted the Government's motion to dismiss relator's *qui tam* complaint. Dkt. 62 ("July Op."). The Court held that the Government had proffered at least two valid reasons for dismissal of relator's suit, and that relator had not carried its burden to show that dismissal would be fraudulent, arbitrary and capricious, or illegal. *See id.* at 8–9. On August 3, 2020, relator filed a notice of appeal. Dkt. 66.

## B. The Instant Motion

On October 27, 2020, relator filed a motion to reopen the case, Dkt. 67 ("Relator Mot."), and a brief in support of its motion for an indicative ruling that, had the Court retained jurisdiction, it would have vacated the dismissal, Dkt. 68 ("Relator Mem.").

---

[2] These included the declarations, each with attached exhibits, of FBI Special Agent Matthew Komar, Dkt. 32, of FBI Special Agent Wayne Boddy, Dkt. 33, of Alexandre Manfull, Dkt. 34, and of Patrick Bryan, Dkt. 35.

[3] These included the declarations of Robert Marcellus, Dkt. 48-1, Julian Knight, Dkt. 48-2, Anshuman Chandra, Dkt. 48-3, and Dennis Sweeney, Dkt. 48-4.

[4] These included the reply affirmations of Agent Komar, Dkt. 55; Agent Boddy, Dkt. 56, Alexandre Manfull, Dkt. 57; and Elizabeth Nochlin, Dkt. 58.

4

The basis for relator's motion was a series of Buzzfeed News reports, the first of which was published on September 20, 2020. Relator argues that these news reports (the "BuzzFeed News Reports") justified vacating the dismissal. Relator Mot. ¶¶ 10, 17. It argues that the BuzzFeed News Reports constitute "[n]ewly discovered evidence" which "exposes the Government's representations [in its motion to dismiss filings] as untrue." Relator Mem. at 1.

Relator's arguments are not models of clarity. But relator appears, in essence, to argue that (1) the BuzzFeed News Reports show that defendants had engaged in transactions with sanctioned Iranian entities after 2007, and (2) that this contradicts a premise of the Government at the time it moved for the dismissal of relator's claims. As its factual basis for claiming that there were post-2007 transactions, relator represents that it gave internal Standard Chartered documents to the BuzzFeed reporters responsible for the news report, and that these reporters compared these documents to records of Suspicious Activity Reports ("SARs") that the reporters had obtained.[5] Relator Mem. at 4–5. BuzzFeed then reported that at least 31 companies whose names appeared in Standard Chartered's internal records also appeared in one or more of 35 SARs relating to such transactions. *Id.* at 5; *see* Dkt. 73 ("Gov't Mem.") at 7. Relator quotes an excerpt from the BuzzFeed News Reports that "Standard Chartered processed hundreds of millions of dollars for companies it suspected were circumventing sanctions against Iran until at least 2017." Relator Mem. at 5. Relator further accuses the Government of failing to acknowledge in its filings pursuing dismissal that it had known about

---

[5] SARs are confidential reports "filed by financial institutions when they suspect a customer or a transaction might be involved in illegal or other suspicious activity." Dkt. 73 ("Gov't Mem.") at 1 n.2 (citing Dkt. 75 ("Manfull Decl.") ¶¶ 8–10); *see also id.* at 9–10 (explaining that as a matter of law, the Government "cannot confirm or deny . . . the veracity of any descriptions in the [BuzzFeed News Reports] of alleged leaked SARs or otherwise discuss the contents of any SAR," but that, to resolve relator's instant motion, there is no need for the Court to review the SARs at issue).

5

the SARs later reported by BuzzFeed. *Id.* at 9. Relator concludes that, given the ostensible revelations made by BuzzFeed, "it cannot be true" either that "the Government closely examined the records produced by relator" or that "Government investigators honestly came to the conclusion that Relator's allegations were meritless." *Id.* at 10.[6]

On October 27, 2020, this Court directed the Government to respond to relator's motion to reopen the case and for an indicative ruling that, if empowered to do so, the Court would vacate the dismissal. Dkt. 69. On November 12, 2020, the Second Circuit granted relator's motion to hold its appeal in abeyance pending the resolution of that motion. Dkt. 71.

On December 22, 2020, the Government filed a memorandum in opposition to relator's motion, Dkt. 73, and supplemental declarations of Agent Komar, Dkt. 74 ("Komar Decl."), and Alexandre Manfull, Dkt. 75 ("Manfull Decl."). On January 11, 2021, relator filed a reply, Dkt. 76 ("Relator Reply"),[7] and, the next day, the second supplemental declaration of Robert G. Marcellus, Dkt. 77 ("Marcellus Decl."); and the supplemental declaration of Anshuman Chandra, Dkt. 78 ("Chandra Decl.").[8]

---

[6] Relator also faults DOJ and the Department of the Treasury for failing to implement President Trump's campaign to put Iran under "maximum pressure." Relator Mem. at 7. Whatever the merits of that commentary, it addresses matters outside the scope of this suit, which pertains to relator's claims that transactions between defendants and sanctioned Iranian entities continued past 2007.

[7] The same document also appears at docket entry 79.

[8] Much of this filing seeks to relitigate—independent of the BuzzFeed News Reports—the reasoning behind the Court's grant of the motion to dismiss. *See* Relator Reply at 1–2 (discussion of relator's earlier documentation submitted to the Government); *id.* at 2–6 (terming Agent Komar and Manfull's testimony "implausible"); *id.* at 8 (referring Court to relator's opening brief on appeal); *id.* at 9–10 (arguing that Court's decision violates due process "[g]iven the conflicting record here").

On February 2, 2021, the Court granted the Government leave, over relator's objection, to file a sur-reply brief. Dkts. 81–83. On March 8, 2021, the Government filed a sur-reply, Dkt. 86 ("Gov't Sur-reply"), and the third supplemental declarations of Agent Komar, Dkt. 87 ("Komar Supp. Decl."), and Manfull, Dkt. 88 ("Manfull Supp. Decl.").[9] Relator also submitted a letter with an offer of proof in response to the Government's sur-reply. Dkt. 91.[10]

## II.     Applicable Legal Standards

### A.     Indicative Ruling

Because relator has filed a notice of appeal, this Court presently lacks jurisdiction over this case. Under Federal Rule of Civil Procedure 62.1, however, a court that lacks jurisdiction because of a pending appeal may issue an indicative ruling. That rule provides:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a); *see also, e.g., Knopf v. Esposito*, No. 17 Civ. 5833 (DLC), 2018 WL 1961105, at *1 (S.D.N.Y. Apr. 24, 2018).

### B.     Rule 60(b)

Here, relator seeks relief under three provisions of Rule 60(b), as more fully explicated below. Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding[.]" The rule should, "[p]roperly applied . . . strike[]

---

[9] On March 8, 2021, the Government moved to place under seal portions of docket entries 76, 77, and 79. Dkt. 89. On March 12, 2021, the Court granted that motion. Dkt. 90.

[10] Relator also made filings without leave, including four copies of its sur-reply memorandum of law at docket entries 92–95, with a different exhibit attached to each, *see* Dkt. 92-1, Dkt. 93-1, Dkt. 94-1, Dkt. 95-1. These unauthorized submissions would not, if properly considered, alter the disposition of the pending motion.

7

a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *see also, e.g.*, *Det. Badge #379 Angel Santiago v. ID&T/SFX Mysteryland LLC*, No. 17 Civ. 101 (PAE), 2018 WL 1918612, at *1 (S.D.N.Y. Apr. 19, 2018). However, "[m]otions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell, in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990); *see also Nemaizer*, 793 F.2d at 61 ("Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances.").

### C. Rule 60(d)

Relator also seeks relief under Rule 60(d). Rule 60(d) allows the court to "entertain an independent action to relieve a party from judgment," Fed. R. Civ P. 60(d)(1), or to "set aside a judgment for fraud on the court," Fed. R. Civ. P. 60(d)(3), the provision that relator invokes here. The bar for invoking Rule 60(d) is high. "Rule 60(d) actions are warranted only when necessary 'to prevent a grave miscarriage of justice.'" *LinkCo, Inc. v. Naoyuki Akikusa*, 367 F. App'x 180, 182 (2d Cir. 2010) (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998)).

## III. Discussion

Relator principally seeks relief under Rule 60(b)(2), and, in the alternative, under Rules 60(b)(1); 60(b)(3); and 60(d)(3). *See* Relator Mot. ¶¶ 17–19. The Court considers each ground for relief in turn, treating 60(b)(3) and 60(d)(3), which both concern fraud, together.

### A. Rule 60(b)(2)

Rule 60(b)(2) allows a court to vacate a previously entered final judgment because of "newly discovered evidence that, with reasonable diligence, could not have been discovered" within 28 days after the entry of judgment. Fed. R. Civ. P. 60(b)(2). A motion pursuant to this rule is disfavored and "properly granted only upon a showing of exceptional circumstances."

8

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *see also, e.g., Reese v. McGraw-Hill Cos., Inc.*, 293 F.R.D. 617, 621 (S.D.N.Y. 2013), *aff'd sub nom. Reese v. Bahash*, 574 F. App'x 21 (2d Cir. 2014). A party seeking relief under Rule 60(b)(2) has the "onerous" burden of demonstrating four elements:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Teamsters*, 247 F.3d at 392.

Here, relator argues that the information in the BuzzFeed News Reports "is of such credibility and gravity" that the Court should set aside its order dismissing relator's claims. Relator Mot. ¶ 17. Relator, however, fails for multiple reasons to show that exceptional circumstances are present. For present purposes, the Court focuses on the most glaring deficiency: relator's failure to show, as required by the third element above, that the BuzzFeed News Reports would be admissible or is of such importance as likely to have changed the outcome of the earlier motion to dismiss.

As to admissibility, it is black letter law that newspaper articles are hearsay under Federal Rules of Evidence 801, and hence inadmissible if offered for the truth of the matter(s) asserted therein. *See, e.g., Tokio Marine & Fire Ins. Co. v. Rosner*, 206 F. App'x 90, 95 (2d Cir. 2006). That, however, is precisely the purpose for which the relator proposes to put the BuzzFeed News Reports: as ostensible proof of the truth of the matters described therein relating to the purported content of the SARs, and how they ostensibly contradict the Government's assertions.

Nor can the SARs themselves clear the third element of the Rule 60(b)(2) bar. These reports, of course, have not been produced to relator—relator relies merely on BuzzFeed's secondhand description of them. And even if the SARs were physically in hand, it is likely that

9

they, too, would constitute hearsay, insofar as SARs, by their nature, are reports of observations made by financial institutions, often on the basis of documents in their custody, and as such are themselves secondhand conduits of information. In any event, the SARs, even assuming away these impediments, would not be admissible in this litigation. Per federal regulation, SARs, and information that would reveal their existence, "are confidential and shall not be disclosed except as authorized" in that paragraph. 31 C.F.R. § 1020.320(e); *see also* 12 C.F.R. § 21.11(k) (Office of the Comptroller of the Currency regulation). The First Circuit has recently synthesized the caselaw concerning these regulations governing SARs. It noted that "[d]istrict courts have extrapolated from the statute and regulations an unqualified discovery and evidentiary privilege that cannot be waived." *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 39–40 (1st Cir. 2015) (cleaned up); *see also Bank of China v. St. Paul Mercury Ins. Co.*, No. 03 Civ. 9797 (RWS), 2004 WL 2624673, at *5–6 (S.D.N.Y. Nov. 18, 2004), *as modified on reconsideration sub nom. Bank of China, N.Y. Branch v. St. Paul Mercury Ins. Co.*, No. 03 Civ. 9797 (RWS), 2005 WL 580502 (S.D.N.Y. Mar. 10, 2005). Accordingly, even if BuzzFeed were subpoenaed for and produced the SARs that its reporting described, and even if the contents of the SARs was non-hearsay under Rule 801, the SARs would still not be admissible.

In any event, even if they were admissible, neither the BuzzFeed News Reports nor the SARs as described therein are "of such importance that [they] probably would have changed the outcome" on the Government's motion to dismiss. *See Teamsters*, 247 F.3d at 392. Critically, the Government represented in moving to dismiss that it had undertaken an investigation of relator's claims, and that it had found transactions by Standard Chartered after 2007, but that these had already been reported to the Government, and "were largely winding-down of preexisting (*i.e.*, pre-2007) transactions or otherwise did not appear to violate any sanctions

10

rules." Gov't Mem. at 13. The Court found that the Government had thereby demonstrated a valid government purpose to dismiss the *qui tam* action, and the Government's "considered decision not to expend additional resources on this litigation," which the Government had found meritless, to be an additional, independent valid governmental purpose. July Op. at 6–7. Nothing in the BuzzFeed News Reports' account of the SARs would disturb that finding. As the Government convincingly explains, none of the SARs discussed in the article contradict its representations about the character of Standard Chartered's post-2007 transactions or that they had been discovered and reported to the Court. Nor do, or by nature could, they unsettle the Government's representations, on which the Court relied, as to the Government's purposes for moving to dismiss this case. *See* Gov't Mem. at 16 (explaining that the alleged SARs that referred to known Iranian entities "would add nothing to the Government's investigation"); Manfull Decl. ¶ 13 ("Whether SCB filed any alleged SARs related to these known Iranian clients is irrelevant because the principal question under investigation was whether the Bank's own post-2007 transactions with those Iranian entities violated any sanctions rules."); *id.* ¶¶ 17–22 (reviewing the BuzzFeed News Reports' allegations and arguing that they do not support relator's claims). Relator therefore fails to show the exceptional circumstances required for relief under Rule 60(b)(2).

### B. Rule 60(b)(1)

Under Rule 60(b)(1), "the court may relieve a party . . . from a final judgment" upon a showing of "mistake . . . or excusable neglect." Fed. R. Civ. P. 60(b)(1). Relator argues that the Government's representations of relator's claims "were based . . . on a mistake or excusable neglect." Relator Mot. ¶ 18; *see also* Relator Mem. at 2 (describing "serious misrepresentations arising out of the Government's 'mistake' or 'excusable neglect'").

11

### 1.     Mistake

A party may seek relief under Rule 60(b)(1)'s mistake provision "to remedy the mistake of a party or his representatives," *In re Matter of Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir. 1981), or "when the judge has made a substantive mistake of law or fact in the final judgment or order," *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 210 (S.D.N.Y. 2011) (internal quotation marks omitted), in which case the movant "must show that the district court committed a specific error," *id.* (quoting *Lugo v. Artus*, No. 05 Civ. 1998 (SAS), 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008)).

### 2.     Excusable Neglect

The determination of excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assoc., Ltd.*, 507 U.S. 380, 395 (1993). In evaluating such a claim, courts look to the following factors: "[1] the danger of prejudice to [the nonmoving party], [2] the length of delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*; *see also Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994); *United States v. Hooper*, 9 F.3d 257, 259 (2d Cir. 1993); *Santiago*, 2018 WL 1918612, at *1.

### 3.     Application

Relator has not shown that it is entitled to relief under 60(b)(1) based on either a mistake or excusable neglect. As to the former, relator has not stated that this Court committed a specific substantive error or made a substantive mistake. Nor has it stated that it seeks relief from an error it or its representatives made.

Instead, relator attributes the mistake to the Government. It does not specify what that mistake was. (Inferentially, relator appears to claim that the Government had been unaware of Standard Chartered's post-2007 transactions, but, as noted, the Government has refuted that claim.) Relator instead makes only the blurry claim that the Government "submitted numerous misrepresentations," Relator Mem. at 7, and that these "ar[o]s[e] out of the Government's 'mistake,'" *id.* at 2. These bland generalities do not establish the exceptional circumstances required by Rule 60(b)(2), or the specific circumstances required by Rule 60(b)(1).

As to excusable neglect, the Rule is aimed at circumstances where the movant seeks relief from its *own* such neglect. *See, e.g., Pioneer Inv. Servs.*, 507 U.S. at 393–95; *Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 386 (E.D.N.Y. 1998) (in analyzing whether relief under Rule 60(b)(1) is warranted, "a court must first determine whether the order from which relief is sought was the consequence of 'excusable neglect' by the movant or the movant's counsel"). That circumstance does not exist here. The Government, whom relator faults for ostensibly neglecting to uncover Standard Chartered's post-2007 transactions, is not seeking relief. In any event, as *Pioneer Investment Services* reflects, Rule 60(b)(1) is intended to empower a party to attempt to avoid the hard consequences of its own procedural lapse, not to provide a do-over based on the ostensible emergence of new substantive evidence. Rule 60(b)(1) is not triggered here. And, as noted, insofar as relator's claims sound in newly discovered evidence, they are governed by Rule 60(b)(2)—whose requirements it fails to satisfy—"and should not be labeled as if brought under a different provision of Rule 60(b)." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) (cleaned up).

### C.     Rule 60(b)(3) and 60(d)(3)

Under Rule 60(b)(3), a district court may relieve a party from a final judgment for fraud or fraud on the court. Fed. R .Civ. P. 60(b)(3); *State St. Bank*, 374 F.3d at 176 (citing

13

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 661 (2d Cir. 1997)). To succeed on a Rule 60(b)(3) motion, "a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." *State St. Bank*, 374 F.3d at 176 (internal quotation marks omitted). The movant must show "clear and convincing evidence of material misrepresentations." *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989). The motion "cannot serve as an attempt to relitigate the merits." *Id.*

Like Rule 60(b)(3), Rule 60(d)(3) allows a court to set aside a judgment for fraud on the court, but without Rule 60(b)(3)'s limitations period.[11] *Shah v. New York State Dep't of Civ. Serv.*, No. 94 Civ. 9193 (RPP), 2014 WL 3583506, at *3 (S.D.N.Y. July 17, 2014) (citing *Anderson v. New York*, 07 Civ. 9599 (SAS), 2012 WL 4513410, at *5 (S.D.N.Y. Oct. 2, 2012)). Fraud satisfying Rule 60(d)(3) "is narrower in scope than that which is sufficient for relief" under Rule 60(b)(3). *Id.* (quoting *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995)). To meet the rule's "stringent and narrow" requirements for relief, *Anderson*, 2012 WL 4513410, at *4, the movant must show that the fraud "seriously affects the integrity of the normal process of adjudication," by clear and convincing evidence, and that "the fraud, misrepresentation or conduct . . . actually deceived the court." *Id.* (cleaned up). "[S]uch fraud must seriously affect the integrity of the normal process of adjudication." *LinkCo*, 367 F. App'x at 182 (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988)) (cleaned up). In other words, claims of fraud under Rule 60(d) "embrace[] only that species . . . which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court . . ." *Hadges*, 48 F.3d at 1325.

---

[11] A motion under Rule 60(b)(1), (2), or (3) must be made within a year after the entry of the judgment, order, or the date of the proceeding. *See* Fed. R. Civ. P. 60(c)(1).

14

Relator does not come close to showing such a fraud here. Relator states that, "should the Court determine that the false representations made by the Government in support of its motion to dismiss were made intentionally and for an improper purpose that would constitute fraud on the Court." Relator Mot. ¶ 19. The Court, however, does not and cannot find that a false representation was made. Relator also fails to establish any requirement of Rule 60(b)(3) and 60(d)(3) for fraud. Relator cannot show, let alone by clear and convincing evidence, that the BuzzFeed News Reports reveal material representations that impeded relator from presenting its case, or that the Court was deceived, and the integrity of its processes affected, by false representations. Rather, as discussed above, relator has not demonstrated that the Court's decision to dismiss relator's claims was the product of any misrepresentation whatsoever. Relator falls far short of the exacting standard required to demonstrate fraud or fraud on the Court.

## CONCLUSION

For the foregoing reasons, the Court denies relator's motion for an indicative ruling that, if it had jurisdiction to do so, it would grant relator relief under Rule 60. Quite to the contrary, were the Court of Appeals to remand this case, the Court would deny relator's motion for relief under Rule 60.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 67. This case remains within the jurisdiction of the Court of Appeals.

SO ORDERED.

                                                   *Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: October 13, 2021
       New York, New York