# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRUTUS TRADING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, and STANDARD CHARTERED TRADE SERVICES CORPORATION,<br><br>Defendants. | No. 18 Civ. 11117 (PAE) |

**SUPPLEMENTAL DECLARATION OF SPECIAL AGENT MATTHEW F. KOMAR**

I, Special Agent Matthew F. Komar of the Federal Bureau of Investigation, hereby declare the following pursuant to 28 U.S.C. § 1746:

1. I previously submitted a declaration in support of the United States' motion to dismiss Relator's second amended complaint in the above-captioned case.[1] I have reviewed the Relator's opposition to this motion, and hereby make the following supplemental declaration to respond to certain factual inaccuracies and other points made in Relator's opposition papers with regard to the government investigations at issue.

2. I make this declaration, like the previous one, based on my own personal knowledge as well as a review of documents relating to these investigations. This declaration does not set forth all of my knowledge of the matters discussed herein. All dates and amounts set forth are approximate and to the best of my recollection, unless otherwise noted.

---

[1] This declaration uses abbreviations and capitalized terms defined in my original declaration.

## A. The Investigation of Relator's Allegations

1. As discussed in my first declaration, I participated in the January 16, 2013, interview of the two members of the Relator entity, Julian Knight and Robert Marcellus, at which the investigating agencies asked about the documents that Relator had provided.

2. At that interview, Mr. Knight directed us to certain entries in those documents reflecting particular known Iranian clients of SCB who he said had continued to transact with the Bank after 2007. These clients included Iranian banks, government agencies, and large companies, such as Bank Markazi (Iran's central bank), Bank Saderat, and the National Iranian Tanker Company. As explained in my prior declaration and in the declaration provided by Alexandre Manfull of OFAC, our investigation concluded that SCB's post-2007 transactions with these entities which were referenced in these documents were either legitimate wind-down transactions that the Bank had previously (i.e., before the Relator filed its complaint) disclosed to DOJ and OFAC or otherwise did not appear to violate any sanctions rules.

3. We likewise did not find evidence that the Bank had facilitated improper foreign-exchange transactions with known Iranian entities or that it had hidden such transactions by booking the associated revenue in "sundry" accounts.

4. Our investigation included requesting and reviewing large numbers of documents from the Bank, attending presentations given by Bank counsel about these transactions, and interviewing Bank employees regarding these transactions.[2] After completing these steps, during

---

[2] As mentioned in my prior declaration, as part of our investigation, we provided counsel for SCB with some of the documents we received from Relator, after obtaining the consent of Relator's then-counsel to do so and having Relator's counsel remove any metadata from them that might associate them with Mr. Knight. Mr. Marcellus is thus incorrect that we failed to adequately remove the metadata from these documents, as we were not involved in that process. Mr. Marcellus is also incorrect that anyone from the investigating agencies disclosed Mr. Knight's name to SCB or its counsel.

2

which we did not uncover evidence corroborating Relator's allegations, we asked the Bank to provide more detailed information about certain representative transactions. The Bank provided this information in a report prepared by an independent consultant. The report confirmed what we had learned from other sources—that the transactions at issue were either legitimate wind-down transactions or were otherwise compliant with sanctions rules.

5. At no point in the Relator interview did Mr. Knight or Mr. Marcellus indicate that the agencies should investigate entities listed on the documents Relator had provided that were not clearly identified in Bank records as Iranian, such as Dubai-based corporate entities. Instead, Relator identified and urged us to investigate only transactions with a handful of specific known Iranian entities on these documents, such as many of those listed in paragraphs 40-44 of Mr. Knight's declaration.[3]

6. As I explained in my previous declaration, some of the client lists and other documents provided by Relator included, among well over a thousand other SCB clients, a corporate entity for which Mahmoud Reza Elyassi was listed as a contact. Relator never indicated during the course of the investigation that we should look into this entity, and Mr. Elyassi's contact information in the documents Relator provided does not associate him with Iran. The fact that Mr. Elyassi's Dubai-based company was listed as a client of SCB's Dubai branch was not notable or suspicious in any way.

---

[3] Nor did Messrs. Knight or Marcellus indicate to us that any of the SCB spreadsheets they provided contained "hidden" columns or data. However, as part of preparing this declaration, I have re-reviewed these documents, including all "hidden" information I could locate, and did not see any additional material information that would have been relevant to our investigation, such as information suggesting that any entities other than those Relator brought to our attention at the time were Iranian.

3

7. Relatedly, Mr. Knight is incorrect that the SCB employees he identifies in his declaration, Salar Khan and Harish Hernandes, supervised or otherwise worked closely with the two Bank employees (identified in the Elyassi indictment as Persons A and B) who conspired with Mr. Elyassi to cover up his companies' Iranian connections.

8. Relator also incorrectly suggests that the documents it provided to the investigating agencies included the petrochemical company whose association with SCB was actually disclosed to DOJ and FBI through an unrelated criminal investigation (as discussed in paragraphs 26-27 of my previous declaration). I have confirmed that there are no references to the petrochemical company in the documents Relator provided, and that the entries which Relator suggests may be associated with this company are, in fact, unrelated to it.

9. Finally, Mr. Marcellus's declaration references an entity called Tanootas Taban Engineering. This entity was not discussed or highlighted in Relator's interview or any of Relator's submissions during the course of the investigation. The documents provided by Relator at the time do not reference an entity by this name, but do list a similarly named entity whose contact information does not associate it with Iran.

**B. Contacts with Anshuman Chandra**

10. After an introduction mediated by then-counsel for Relator, I corresponded and then spoke with an SCB employee named Anshuman Chandra in September 2013. We first spoke on September 26, 2013.[4] Mr. Chandra had previously made contact with Mr. Knight, directly and through intermediaries. Mr. Chandra also said that he had several CDs containing SCB files, which I asked him to provide to a colleague in the U.S. Consulate in Dubai, who

---

[4] On that call, I informed Mr. Chandra that we had inadvertently disclosed his name to counsel for SCB in an email exchange, but received appropriate reassurance that the attorney in question, a former federal prosecutor, would not share this information with anyone at the Bank.

4

forwarded them to me for review. I then spoke with Mr. Chandra by phone about these files on October 29, 2013, and January 23, 2014, and corresponded with him by email during the same timeframe.

11. During my discussions with Mr. Chandra, we reviewed the documents he provided. I also reviewed them closely on my own. These files and the information that Mr. Chandra provided were similar to that provided by the Relator. Some of it concerned the same entities and transactions the agencies had previously investigated, including Bank Saderat, but did not call into question any of our conclusions regarding SCB's transactions with those entities. Other documents provided by Mr. Chandra discussed SCB's dealings with Al Rajhi Bank, a Saudi bank that I understand was not subject to U.S. sanctions at the time.

12. After discussing this information with other investigating agencies, we decided that the information provided by Mr. Chandra did not provide a basis to expand the ongoing investigation. Just like the information provided by Relator, this information did not figure in our investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   February 28, 2020
         Cleveland, Ohio

                                        Matthew F. Komar
                                        Special Agent
                                        Federal Bureau of Investigation