UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA *ex rel.* BRUTUS TRADING, LLC,

                                Plaintiffs,

-v-

STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, *and* STANDARD CHARTERED TRADE SERVICES CORPORATION,

                                Defendants.

18 Civ. 11117 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In this *qui tam* action brought on behalf of the United States, relator Brutus Trading, LLC ("Brutus Trading" or "relator") has alleged that defendants Standard Chartered Bank, Standard Chartered PLC, and Standard Chartered Trade Services Corporation (together, "defendants" or "Standard Chartered Bank") engaged in banking practices that violated U.S. sanctions against Iran. In a July 2020 decision, the Court dismissed Brutus Trading's complaint. It found that the Government had articulated multiple valid purposes served by dismissal, and that Brutus Trading had not carried its burden to show that a dismissal would be fraudulent, arbitrary and capricious, or illegal. After filing a notice of appeal, Brutus Trading moved to reopen the case and moved for an indicative ruling under Federal Rule of Civil Procedure 62.1 that, had the Court retained jurisdiction, it would have vacated the dismissal based on disclosures in post-dismissal BuzzFeed news reports pursuant to Rules 60(b) and (d). Brutus Trading alleged that these news reports justified vacating the dismissal because they allegedly constituted newly discovered evidence that exposed the Government's representations in its motion to dismiss filings as untrue. In an October 2021 decision, the Court denied the motion, finding that the materials Brutus Trading

cited did not contradict the Government's representations. The Second Circuit affirmed both orders.

Brutus Trading now moves to: (1) set aside the Court's prior decision pursuant to Federal Rule of Civil Procedure 60(d)(3), based on the Government's allegedly having committed fraud on the Court by falsely denying that Standard Chartered Bank did not continue conducting illegal transactions after 2007; (2) appoint an independent expert, pursuant to Federal Rule of Evidence 706(a), to perform a forensic analysis on certain electronic transaction data files Brutus Trading previously provided the Government that allegedly demonstrate Standard Chartered Bank's illegal transactions with Iranian entities and foreign terrorist organizations; and (3) disqualify Assistant United States Attorney ("AUSA") Jean-David Barnea as counsel for the Government. Per the briefing schedule proposed by the parties and adopted by the Court, the Court here first resolves—and denies—the motion to disqualify. *See* Dkt. 120. At a later date, the Court will resolve the motions to vacate and to appoint an independent expert.

## I. Relevant Background

### A. Motion to Dismiss

The Court assumes familiarity with the facts and procedural history of this case, as extensively reviewed in previous opinions. *See* Dkt. 62 ("July Op."); Dkt. 97 ("October Op."). In brief, this matter stems from defendants' admitted practice, between 2001 and 2007, of deceptively facilitating U.S. Dollar transactions by Iranian clients, in violation of U.S. sanctions and various New York and federal banking regulations. *See* Dkt. 18 ("Second Amended Complaint," or "SAC") ¶¶ 27–32.[1] After a multi-year, multi-agency investigation, defendants entered into a 2012 Deferred Prosecution Agreement ("DPA") with the Department of Justice

---

[1] Except where specified, citations to the docket refer to the docket of 18 Civ. 11117 (PAE).

("DOJ")—and related settlements or consent agreements with the Office of Foreign Asset Control ("OFAC"), the Federal Reserve, the New York County District Attorney's Office ("DANY"), and the New York Department of Financial Services ("DFS")—to resolve the matter. Under these, defendants paid hundreds of millions of dollars in fines and penalties. *See id.* The 2012 DPA was publicly announced on December 10, 2012. *Id.* ¶¶ 29, 31–32.

On December 17, 2012, Brutus Trading—an entity formed by Julian Knight and Robert Marcellus for the purpose of pursuing this action—filed a *qui tam* action assigned to Judge Forrest. Brutus Trading alleged that defendants had misled the Government in negotiating the 2012 DPA. *United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank et al.*, No. 12 Civ. 9160 (KBF) ("*Brutus Trading I*"), Dkt. 36. It alleged that defendants had continued to violate the sanctions after 2007, notwithstanding their representations to the Government that they had ceased to do so. *Id.* ¶¶ 25–34.

In approximately August 2013, the Government informed Brutus Trading's counsel that it intended to decline to intervene in the case. Dkt. 31 ("Nov. 2019 Gov't Mem.") at 8; Dkt. 32 ("Nov. 2019 Komar Decl.") ¶¶ 24–25. The Government kept the complaint under seal, however, while it pursued a separate investigation of potential Iran sanctions violations by defendants (the "2013 Investigation"). Nov. 2019 Gov't Mem. at 8; Nov. 2019 Komar Decl. ¶ 31. On May 10, 2017, Judge Forrest unsealed the case, *Brutus Trading I*, Dkt. 19; on July 14, 2017, the Government notified Judge Forrest that it would not be intervening, *id.*, Dkt. 24. On September 19, 2017, Brutus Trading dismissed its complaint without prejudice. *Id.*, Dkt. 35.

On November 29, 2018, Brutus Trading re-filed its complaint, *see* SAC ¶ 37, which was assigned to this Court, with Judge Forrest having left the bench, Dkt. 1. In March 2019, the Government again declined to intervene, Nov. 2019 Gov't Mem. at 12; the case was later

3

unsealed, Dkt. 3. On April 9, 2019, DOJ announced a new DPA (the "2019 DPA") with defendants—and OFAC, the Federal Reserve, and DFS announced new settlement or consent agreements with defendants—stemming from the results of the 2013 Investigation. *See* SAC ¶¶ 60–61; *see also* Dkt. 35 ¶¶ 11–16; Dkt. 58 ¶¶ 13–14.

On July 19, 2019, Brutus Trading filed its First Amended Complaint. Dkt. 15 ("FAC"). The FAC, *inter alia*, added the allegation that the 2019 DPA, like the 2012 DPA, "did not address the broader course of conduct by [defendants] in violation of the Iran sanctions" alleged by Brutus Trading's complaint. *Id.* ¶ 62. The FAC also advanced a new theory of recovery based on alleged reverse false claims, *see* 31 U.S.C. § 3729(a)(1)(G), by defendants, FAC ¶¶ 63–65.

On September 23, 2019, Brutus Trading filed its Second Amended Complaint. The SAC added allegations that it had been the initial source of the information leading to the 2019 DPA and related agreements, *see* SAC ¶¶ 64–65, and was thus entitled to a share of the Government's recovery from those agreements, *id.* ¶ 69.

On November 21, 2019, the Government filed a motion to dismiss the SAC, Dkt. 30, a supporting memorandum of law, Dkt. 31, and declarations, Dkts. 32–35. On January 10, 2020, Brutus Trading filed a memorandum of law in opposition, Dkts. 48–49, with attached exhibits and declarations. On February 28, 2020, the Government filed a reply, Dkt. 54, and associated exhibits and affirmations, Dkts. 54–58. On March 13, 2020, Brutus Trading filed a sur-reply, Dkt. 61, with attached exhibits.

On July 2, 2020, the Court granted the Government's motion to dismiss Brutus Trading's *qui tam* complaint. The Court held that the Government had proffered at least two valid reasons for dismissal of the suit, and that Brutus Trading had not carried its burden to show that dismissal

would be fraudulent, arbitrary and capricious, or illegal. *See* July Op. at 8–9. On August 3, 2020, Brutus Trading filed a notice of appeal. Dkt. 66.

### B. Indicative Motion to Vacate

On October 27, 2020, Brutus Trading filed a motion to reopen the case, Dkt. 67, and a brief in support of its motion for an indicative ruling that, had the Court retained jurisdiction, it would have vacated the dismissal, Dkt. 68. The basis for the motion was a series of Buzzfeed News reports, which it claimed constituted newly discovered evidence and exposed as untrue the Government's representations in support of its motion to dismiss. On October 13, 2021, the Court denied the motion, finding that the new materials did not contradict the Government's representations. *See* October Op.

On November 3, 2023, the Second Circuit affirmed both the dismissal and the order denying the motion to reopen the case. Dkts. 98–100.

### C. Instant Motion

On July 9, 2024, Brutus Trading filed the instant motion to disqualify AUSA Barnea from further representing the Government, Dkt. 127, and a supporting memorandum of law, Dkt. 128 ("Relator Mem.") and declaration, Dkt. 131 ("McSweeney Decl."). On July 15, 2024, the Government filed its opposition. Dkt. 132 ("Gov't Opp."). On July 16, 2024, Brutus Trading filed a reply. Dkt. 133 ("Reply").

The basis for Brutus Trading's motion is the claim that AUSA Barnea, who has represented the Government since December 2012, is at the "center" of the Government's alleged fraud upon the Court, which is the basis for Brutus Trading's pending motion to vacate. Brutus Trading argues that AUSA Barnea, as a purported participant in the fraud, cannot represent the Government in connection with the claims of fraud given that he might be called as a witness in proceedings necessary to resolve the motion to vacate.

5

## II. Applicable Legal Standards

### A. Standards Applicable to Motion to Disqualify

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 418–19 (S.D.N.Y. 2015) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). "Generally, disqualification motions are disfavored, as they are often interposed for tactical reasons, and . . . even when made in the best faith, such motions inevitably cause delay." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). Accordingly, such motions are "subjected to a high standard of proof." *Id.* "Disqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). However, "any doubt is to be resolved in favor of disqualification." *John Wiley & Sons*, 126 F. Supp. 3d at 419.

Although federal courts look to state disciplinary rules in considering motions to disqualify, "such rules need not be rigidly applied as they merely provide general guidance." *Mori v. Saito*, 785 F. Supp. 2d 427, 432 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). Rather, "[t]he disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

### B. Witness-Advocate Rule

Brutus Trading's motion is premised primarily on the witness-advocate rule, as set forth in Rule 3.7 of the New York Rules of Professional Conduct. It provides that, subject to certain exceptions, "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer

6

is likely to be a witness on a significant issue of fact." N.Y. Rules Prof'l Conduct 3.7(a). "When one individual assumes the role of both advocate and witness it '[may] so blur [] the line between argument and evidence that the jury's ability to find facts is undermined.'" *Ramey v. Dist. 141, Int'l Ass'n of Machnists & Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004) (quoting *United States v. Arrington*, 867 F.2d 122, 126 (2d Cir. 1989)). For example, "[a] jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight." *MacArthur v. Bank of N.Y.*, 524 F. Supp. 2d 1205, 1208 (S.D.N.Y. 1981).

"Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions under the witness-advocate rule." *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009)). Disqualification under Rule 3.7(a) "is triggered only when the attorney actually serves as an advocate before the jury." *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010); *see Ramey*, 378 F.3d at 282 ("The advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness *in that very proceeding*."). Additionally, disqualification is warranted only where the testimony given by counsel is necessary. *Finkel*, 740 F. Supp. 2d at 373.

### III.  Discussion

In moving to disqualify AUSA Barnea, Brutus Trading contends that his continued representation of the Government in connection with the pending motion to set aside the judgment pursuant to Rule 60(d)(3) would violate New York Rules of Professional Conduct 3.7 and 1.7. In that pending motion, Brutus Trading alleges that the Government committed fraud on this Court by falsely denying that Standard Chartered Bank transacted with Iranian entities and foreign terrorist organizations after 2007. Brutus Trading contends that because AUSA

7

Barnea represented the Government throughout the underlying litigation, he participated in the alleged fraud. It argues that AUSA Barnea would be an indispensable fact witness were the Court to conduct an evidentiary hearing in connection with the Rule 60(d)(3) motion.

For several reasons, Brutus Trading's contentions are meritless, to the point where they verge on vexatious and frivolous. They fall far short of the "high standard of proof" necessary to justify disqualification.

### A.    Witness-Advocate Rule

AUSA Barnea's continued representation does not violate the witness-advocate rule embodied in New York Rule of Professional Conduct 3.7 because the Court has not scheduled—and does not have plans to schedule—a trial or evidentiary hearing in the case at which AUSA Barnea would have to testify. In relevant part, New York Rule of Professional Conduct 3.7(a) provides that a "lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." This rule "prohibits an attorney from representing a party where the attorney will be called as a witness." *Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 578 (S.D.N.Y. 2019). The "witness-advocate rule is concerned with preventing potential taint *at trial*." *Ross v. Blister*, 09 Civ. 8666, 2009 WL 4907062, at *3 (S.D.N.Y. Dec. 21, 2009).

As the Government rightly notes, there is no trial or evidentiary hearing scheduled in this case. Nor is there any prospect of an upcoming trial or evidentiary hearing. Quite the contrary, the case is currently closed. The Court dismissed it in July 2020 and the Second Circuit affirmed the dismissal. Brutus Trading's current bid to reopen the case almost four years later by filing the pending Rule 60(d)(3) motion is exceptionally unlikely ever to necessitate a trial or even an evidentiary hearing. The Court expects the Rule 60(d)(3) motion to be readily resolved on the papers, without a need for an evidentiary hearing. The Court, notably, did not need to conduct

8

an evidentiary hearing when it resolved (and denied) Brutus Trading's October 2020 motion for an indicative ruling that, had the Court retained jurisdiction, it would have vacated the dismissal based on newly discovered evidence.

Even if there were a colorable basis to project that an evidentiary hearing might be held in the future, with the Court not having scheduled one, under settled case law, it would be premature to disqualify AUSA Barnea based on Brutus Trading's conjecture that his representation of the Government at such a hearing would breach the witness-advocate rule. That is because, at such a preliminary stage, "it is impossible to determine how significant [counsel] might be as a witness or whether he is likely even to be called as a witness; whether his testimony would likely hurt or help his client; or whether his testimony would or would not be cumulative of other witnesses." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 810 (S.D.N.Y. 2018); *see, e.g., id.* ("Here, where there is no record on which to base a disqualification motion, the Court cannot determine with sufficient certainty that defendants have borne their 'high burden' to show that [the attorney's] testimony will be necessary at trial or that the content of that testimony is likely to be prejudicial."); *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 304 (E.D.N.Y. 2009) (denying motion to disqualify where determination "would be merely speculative at this point" in litigation); *Rosefield v. Orentreich*, No. 98 Civ. 2721 (TPG), 1998 WL 567750, at *5–6 (S.D.N.Y. Sept. 4, 1998) (denying motion to disqualify where it was not clear that case would proceed to trial or that counsel would be called to testify; "too much remains unknown").

The Court therefore denies the motion to disqualify on the basis of the witness-advocate rule. There is no risk that AUSA Barnea's continued participation will taint this case. In the improbable event that an evidentiary hearing is one day scheduled, Brutus Trading will be at

9

liberty to renew such a motion, provided one can then be filed consistent with Federal Rule of Civil Procedure 11.

## B. Conflict of Interest

Brutus Trading also briefly argues that disqualification is necessary under Rule 1.7(a)(2). That rule provides that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." Brutus Trading declares that "[a]s an alleged participant in the fraud, Barnea should also be disqualified from representing the Government because 'a reasonable lawyer would conclude that there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own . . . personal interests.'" Relator Mem. at 8 n.2 (citing Rule 1.7(a)(2)).

This argument is undeveloped and specious. For one, Brutus Trading's allegation of fraud is wholly threadbare. "A fraud on the court occurs where it is established by clear and convincing evidence 'that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense.'" *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (quoting *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)). The essence of fraud on the court is that "a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *Id.* But, even assuming the truth of Brutus Trading's claim that the Government wrongly denied that Standard Chartered Bank conducted unlawful transactions post-2007, that is a far cry from meaning that AUSA Barnea or any other government attorney intentionally deceived the Court. Indeed, in its Rule 60(d)(3) motion

briefing, Brutus Trading claims that "[w]ith the assistance of forensic data analysis, Brutus [Trading] was only recently able to reveal or 'decloak' countless illegal transactions that were hidden deep in the Bank's electronic spreadsheets, which Brutus [Trading] gave to the Government." Dkt 102 at 1. Given the difficulty that Brutus Trading itself purports to have had in "decloak[ing]" these alleged illegal transactions, there would be no reason to assume that Government counsel were aware of such misconduct by the bank, as opposed to not having investigated to a degree necessary to uncover such machinations.

Brutus Trading's allegations do not come to close to supporting the serious allegation that the Government or AUSA Barnea committed fraud on the Court by denying that Standard Chartered Bank engaged in illegal transactions. There is no basis to infer a conflict of interest between the AUSA Barnea and the Government—and Brutus Trading has done nothing to substantiate that claim.[2]

A motion to disqualify counsel is a severe sanction and is "subjected to a high standard of proof." *Copantitla*, 788 F. Supp. 2d at 281 (S.D.N.Y. 2011). Brutus Trading's submissions fall very far short of meeting that standard.

## CONCLUSION

The Court denies Brutus Trading's motion to disqualify. The Clerk of the Court is respectfully directed to terminate the motion pending at Docket 127.

---

[2] Brutus Trading also alleges that AUSA Barnea deliberately withheld from the Court the fact that (1) Brutus Trading met with DFS before filing its initial Complaint on December 17, 2012; and (2) DFS and OFAC had preliminary investigated Brutus Trading's allegations regarding Standard Chartered Bank's illegal activity before the Government began its investigation. These allegations do not avail Brutus Trading on this motion, for multiple reasons. For one, contrary to the claim that it hid this information, the Government points to several submissions in which it acknowledged both events. *See* Gov't Opp at 8–9. For another, these allegations do not appear relevant to either the motion to disqualify or the Rule 60(d)(3) motion.

The Court hereby directs the Government to respond to Brutus Trading's motions to vacate and to appoint an independent expert by August 23, 2024. Brutus Trading's reply is due August 30, 2024. This amended briefing schedule will permit the Court to resolve both motions simultaneously.[3]

SO ORDERED.

                                                 *Paul A. Engelmayer*
                                                 Paul A. Engelmayer
                                                 United States District Judge

Dated: August 12, 2024
       New York, New York

---

[3] This amends the briefing schedule at Docket 120 and implements the parties' suggestion, which is well-taken, that these motions be resolved simultaneously. *See* Dkt. 121.